792 P.2d 408

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Christopher Scott PIERCE,**
**Defendant–Appellant.**

**No. 18151.**

Supreme Court of New Mexico.

May 17, 1990.

Hal Stratton, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

DONNELLY, Judge, Court of Appeals.

Defendant appeals his convictions of first degree murder, three counts of first degree criminal sexual penetration of a minor (CSPM), contrary to NMSA 1978, Section 30-9-11(A)(1) (Repl.Pamp.1984), one count of third degree criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13(A) (Repl.Pamp.1984), two counts of fourth degree child abuse, contrary to NMSA 1978, Section 30-6-1 (Repl. Pamp.1984), and fourteen counts of child abuse resulting in death or great bodily harm, also contrary to Section 30-6-1. Two issues are asserted on appeal: (1) whether the evidence presented at trial is sufficient to support defendant's convictions of CSPM and CSCM; and (2) whether defendant improperly was convicted of first degree murder and duplicative counts of child abuse. We affirm in part and reverse in part.

In 1987 defendant began living with Dawn Simandl and her two minor children, a son, age four, and a daughter, age two. Simandl's four-year-old son previously had lived with his maternal grandparents, where he had been toilet trained. When he returned to live with his mother and the defendant, he began to exhibit eating and elimination disorders.

In October 1987 Simandl began attending classes at a beauty college and left the children in defendant's care. The second day of school, defendant phoned her and stated that her son had fallen and broken his arm and was unconscious. After a four-hour delay, defendant and Simandl took the child to a hospital, where he died several hours later.

Medical evidence showed the child had been injured over approximately 90% of his body, that he had sustained over 80 separate blows, and that most of the injuries occurred within 24 to 48 hours of death and were life threatening in nature. Medical evidence indicated that the child's internal injuries were grouped into three categories: those occurring within 12-24 hours of death; those within 3-5 days of death; and those more than a week old. Some of the injuries were described as "pattern" injuries, meaning that one could identify the means of injury by evidence of its pattern. Medical experts testified that the child's

broken arm was consistent with having been caused by a blow from defendant's fist, and that bites received by the child were consistent with having been caused by defendant's teeth. An expert in blood stain pattern analysis testified that evidence of the child's blood stains indicated the beating had occurred in two different locations in the camper where the child lived. A doctor testified that the child's death was caused by intentionally inflicted injuries.

The pathologist testified that there had been three separate penetrations of the child's anus. Additionally, an inmate who had been incarcerated in the county jail with defendant testified that defendant admitted to having beaten the child because he was "in the way," and that defendant killed the child when defendant "lost it" during a period when he was using "crank," a form of methamphetamine. This witness also testified that defendant admitted disciplining the child as he would a dog, and that he "shove[d] something up the boy's butt."

Defendant was charged with first-degree murder, three counts of CSPM, two counts of CSCM, sixteen counts of child abuse resulting in death or great bodily harm, and four counts of child abuse not resulting in death or great bodily harm. Each count of child abuse was based on a separately identifiable injury received by the child. Defendant waived a jury trial. Following trial he was acquitted on one charge of CSCM and four charges of child abuse, and the court found him guilty of the remaining counts of the indictment. The court ordered that defendant's sentences for the three CSPM convictions run concurrent to each other and consecutive to the conviction of first-degree murder. The remainder of defendant's convictions were ordered to be served concurrently with the charge of murder.

## I. SUFFICIENCY OF THE EVIDENCE AS TO CSPM AND CSCM

Defendant argues that, although evidence was presented by the state indicating that the child's anus had been penetrated on three different occasions prior to his death, the jail mate's testimony was the only evidence linking defendant with such acts, and that this evidence was insufficient to support his convictions of CSPM and CSCM. Defendant also contends the inmate's testimony concerning defendant's statement that he "shoved something up the boy's butt" does not indicate defendant had penetrated the child for sexual reasons. Defendant contends the evidence instead indicated that he had been attempting to discipline or punish the child in order to persuade him to stop his incontinence. Defendant urges that the evidence was insufficient to support his convictions of CSPM or CSCM because there was no proof that he committed such acts with the requisite criminal intent.

Criminal sexual penetration, defined by our legislature in Section 30–9–11, provides as follows:

Criminal sexual penetration is the unlawful and intentional causing of a person, other than one's spouse, to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse, or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is an emission.

A. Criminal sexual penetration in the first degree consists of all criminal sexual penetration perpetrated:

(1) on a child under thirteen years of age; or

(2) by the use of force or coercion which results in great bodily harm or great mental anguish to the victim.

Whoever commits criminal sexual penetration in the first degree is guilty of a first degree felony....

Section 30–9–13 defines criminal sexual contact of a minor as:

[U]nlawfully and intentionally touching or applying force to the intimate parts of a minor other than one's spouse or unlawfully and intentionally causing a minor, other than one's spouse to touch one's intimate parts. For purposes of this section, "intimate parts" means the

primary genital area, groin, buttock, anus or breast.

 A. Criminal sexual contact of a minor in the third degree consists of all criminal sexual contact of a minor perpetrated:

 (1) on a child under thirteen years of age

....

■ Defendant specifically argues that his convictions of CSPM and CSCM under Sections 30–9–11 and –13 were not supported by substantial evidence because the state failed to prove that the anal penetration of the child was done with the intent of arousing or gratifying sexual desire in the victim or himself. Citing the requirements of the fourteenth amendment to the United States Constitution and Article II, Section 18, of the New Mexico Constitution, defendant asserts that proof of such intent must be read into the language of both the CSPM and CSCM statutes, otherwise the statutes are unconstitutional and overbroad, prohibiting both innocent as well as criminal conduct.

Defendant reasons that the acts of a parent or caretaker of a child when dressing, bathing, changing diapers, or using a rectal thermometer may involve intentional touching or penetration of the child's intimate parts. Similarly, defendant contends that even necessary medical treatment performed by a health care provider falls within the prohibition of the statutes. We disagree.

We begin our analysis by noting that the CSPM and CSCM statutes specifically limit the application of such offenses to instances wherein defendant's conduct in touching or penetrating the child is "unlawful" or "unlawfully" committed. The terms "unlawful" or "unlawfully" limit the scope of prohibited conduct to those acts that are without legal justification or excuse. *See State v. Larson,* 94 N.M. 795, 617 P.2d 1310 (1980); *State v. Noble,* 90 N.M. 360, 563 P.2d 1153 (1977); *Territory v. Anderson,* 4 N.M. 213, 13 P. 21 (1887); *see also State v. Chenault,* 20 N.M. 181, 147 P. 283 (1915). Neither CSPM nor CSCM prohibit the touching or penetration of the intimate parts of a minor for purposes of providing reasonable medical treatment to a child, nor do they criminalize nonabusive parental or custodial child care. Moreover, the constitutionality of a statute is generally subject to challenge only by a person who demonstrates the unconstitutional application of the statute to him. *State v. Casteneda,* 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982).

■ Defendant also argues that there is no clear demarcation between both CSPM and CSCM and the offenses of battery, contained in NMSA 1978, Section 30–3–4 (Repl.Pamp.1984), or child abuse, proscribed by Section 30–6–1. We disagree.

Our CSPM statute prohibits penetration of the genital or anal openings of a child. § 30–9–11(A)(1). Similarly, CSCM also prohibits the unlawful touching of the "intimate parts" of another, other than one's spouse. § 30–19–13. In defining "intimate parts," the CSCM statute lists five separate protected areas: the genital area, groin, buttocks, anus, and breast. § 30–9–13. The legislative intent underlying both CSPM and CSCM is to protect children from unlawful intrusions to each enumerated area of the body. *See State v. Williams,* 105 N.M. 214, 730 P.2d 1196 (Ct.App.1986). The language of the statutes clearly prohibits such unlawful intrusions.

Child abuse and battery are distinguished from CSPM and CSCM in that the latter statutes only apply when the proscribed conduct involves a penetration or touching of the specifically-defined intimate areas. Both the CSPM and CSCM statutes must be construed in light of the purposes for which they were enacted and the wrongs sought to be remedied. *See Tijerina v. Baker,* 78 N.M. 770, 438 P.2d 514 (1968). The legislatively-protected interests under the CSPM and CSCM statutes are aimed at protecting the bodily integrity and personal safety of children. *See State v. Williams.* It lies within the legislature's power to specify different criminal standards pertaining to these areas of the body, given the fact that greater pain, embarrassment, psychological trau-

ma, or humiliation may result from contact with intimate body parts as compared to contact with other parts of the body. Thus, unlike battery, conduct consisting of unlawful penetration of the genital or anal areas of a child or a touching of the intimate parts of a minor is governed specifically by Sections 30–9–11 and –13.

Unlawful contact, intentionally perpetrated upon a victim and involving areas of the body other than the five enumerated "intimate parts," may be punishable under other statutes, such as battery, mayhem, child abuse, or, in severe cases, homicide. *See State v. Lujan,* 76 N.M. 111, 412 P.2d 405 (1966) (specific statute controls over general statute). We determine that the CSPM and CSCM statutes constitute separate distinguishable offenses.

■ Defendant also asserts that the CSPM and CSCM statutes are unconstitutionally vague because a person of ordinary intelligence would not be able to determine the line of demarcation between lawful and unlawful conduct as proscribed by such offenses.

In *Larson,* when the defendant was charged with coercing his two minor daughters into performing various sexual acts with him, we said:

> We do not in any way believe that a person of ordinary intelligence would not understand which type of conduct is proscribed by Section 30–9–11.... As to a child under thirteen, even though a case might be hypothesized which would fit within the terms of the statute but for which there should be no criminal liability, we do not think it 'encourages arbitrary and erratic arrests and convictions.' (Citations omitted.) *Papachristou v. City of Jacksonville,* 405 U.S. 156 [92 S.Ct. 839, 31 L.Ed.2d 110] ... (1972). 'Unlawful' has been defined by this Court as 'without excuse [or] justification,' *Territory v. Gonzales,* 14 N.M. 31, 38, 89 P. 250 (1907), and the use of that term by the statute does not render the statute void for vagueness *in these circumstances.*

94 N.M. at 796–97, 617 P.2d at 1311–12 (emphasis added); *see also State v. Jime-nez,* 89 N.M. 652, 556 P.2d 60 (Ct.App.1976) (statutory provisions regarding second and third degree CSP not void for vagueness); *State v. Minns,* 80 N.M. 269, 454 P.2d 355 (Ct.App 1969) (words "indecent handling or touching" in sexual assault statute not unconstitutionally vague when considered in light of statute as a whole). As the discussion below indicates, we also do not believe the statutes in question are unconstitutionally vague when the evidence shows defendant intended to cruelly punish his victim.

■ The proscription on vagueness in criminal statutes serves three important functions: (1) It allows individuals a fair opportunity to determine whether their conduct is prohibited. (2) It prevents impermissible delegation of legislative authority to police, prosecutors, and courts to determine whether conduct is criminal. (3) In cases in which the prohibited conduct abuts with conduct protected by the first amendment, it avoids impermissible chilling of protected speech through overbroad prohibitions. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *see also United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954) (criminal statute must give person of ordinary intelligence fair notice that conduct is forbidden). "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975) (citing *United States v. National Dairy Prods. Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963)); *see also State v. Casteneda,* 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982) (criminal solicitation statute not unconstitutionally vague as applied).

In *National Dairy Products Corp.,* the Supreme Court discussed claims of vagueness and distinguished between the question of whether a statute is facially valid and the question of whether the statute is valid *as applied.* 372 U.S. at 32, 83 S.Ct. at 597. The Court held that "[i]n determining the sufficiency of the notice a statute must of necessity be examined in the light

of the conduct with which a defendant is charged.... This is not to say that a bead-sight indictment can correct a blunderbuss statute, for the latter itself must be sufficiently focused to forewarn of both its reach and coverage." *Id.* at 33, 83 S.Ct. at 597. *See also Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1985) (penal statute must define offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement); *State v. Brecheisen,* 101 N.M. 38, 677 P.2d 1074 (Ct.App.1984) (statute is not void for vagueness if it is susceptible to a reasonable and practical interpretation).

■ A corollary to defendant's vagueness argument is the question of legislative intent—that is, did the legislature implicitly intend to require proof of a specific sexual intent as an element of CSPM or CSCM? *See Flink v. State,* 683 P.2d 725 (Alaska App.1984) (discussing vagueness contention incident to legislative intent). After reviewing the statutory provisions of our CSPM and CSCM statutes, we do not believe the legislature intended to adopt a requirement of specific sexual intent as an element of either statute.

Examination of Sections 30–9–11 (CSPM) and –13 (CSCM), indicates that our legislature, by 1975 N.M. Laws, Chapter 109, Sections 2 and 3, repealed the prior forcible rape and sexual assault statutes and enacted comprehensive new statutory provisions, patterned in part after statutes proscribing criminal sexual conduct adopted by the state of Michigan. *See* Mich.Comp.Laws Ann., §§ 750.520a–750.520c (West Supp. 1989).[1] *See generally,* Washburn, *Rape Law: The Need for Reform,* 5 N.M.L.Rev. 279 (1974); Note, *Recent Statutory Developments in the Definition of Forcible Rape,* 61 Va.L.Rev. 1500 (1975). Both the CSPM and CSCM statutes as enacted by our legislature materially modified our criminal code provisions relating to sexual offenses. The legislatively-protected interest under the New Mexico CSPM and CSCM statutes focuses upon the bodily integrity and personal safety of individuals, both female and male. *See State v. Williams.*

In *Flink,* the court analyzed the different approaches taken by a number of state legislatures, including Michigan, in revising their statutes proscribing criminal sexual acts. As observed in *Flink,* a number of states have followed the approach suggested by the American Law Institute's Model Penal Code, which defines unlawful criminal sexual contact as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire." Model Penal Code § 213.4 (Official Draft and Revised Comments 1980). As noted in *Flink:*

> [M]ost state provisions that are based upon the Model Penal Code define sexual contact to include this specific intent. *See e.g.,* N.Y. [Penal] Law Ann. § 130.00(3) (McKinney 1975) (" 'sexual contact' means any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of any party.").
>
> ....
>
> ... [*T*]*he primary distinction between the Model Penal Code and the New York provisions on the one hand, and the Michigan and Arizona codes, on the other, is that the former expressly require a specific intent and the latter do not.*

*Id.* at 729 (emphasis added).

The court in *Flink* discussed the distinctions between those states which have followed the approach advocated by the Model Penal Code, and the approaches taken by Michigan and Arizona. The court observed:

1. Arizona has adopted similar legislation prohibiting sexual conduct involving children, without involving proof of sexual penetration. Ariz. Rev.Stat.Ann., §§ 13–1403; –1404 (1989). The Arizona statutes, however, specifically set out certain exceptions or defenses to a charge of unlawful sexual contact upon a child, including acts done in furtherance of lawful medical practice, or where defendant was "not motivated by a sexual interest." *See* Ariz.Rev.Stat.Ann., § 13–1407 (1989).

[T]he Michigan and Arizona statutes, ... are ... distinct from the statutes ultimately adopted by [the Alaska] legislature. Michigan includes language in its definition of "sexual contact" clearly suggesting general intent. This language was not carried over into the Alaska statute. Arizona adopted specific defenses to charges of sexual abuse which are likewise absent from the Alaska statutes.

*Id.* at 733.

In *People v. Jarman*, 140 Mich.App. 93, 362 N.W.2d 900 (1985), the court considered an argument similar to that urged by defendant herein. Jarman was convicted of first-degree criminal sexual conduct involving digital penetration of his fourteen-year-old daughter. He requested, and was denied, a jury instruction providing that, if the jury determined that the alleged unlawful act in fact had been committed by him, the act was not unlawful unless it " 'had as its purpose the arousing, stimulating or gratifying of the sexual emotions [or it must have been done with some other sexually improper intent or purpose].' " *Id.* at 95, 362 N.W.2d at 901 (quoting CJI 20:2:04).

The *Jarman* court observed that, although the instruction requested by defendant had been drafted by the Michigan jury instruction committee, the proffered instruction was an inaccurate statement of law because it purported to add a specific-intent requirement not contained in the crime of first-degree criminal sexual conduct. *Id.* *See also People v. Clement Anderson*, 111 Mich.App. 671, 314 N.W.2d 723 (1981); *People v. Garrow*, 99 Mich. App. 834, 298 N.W.2d 627 (1980). *But see People in the Interest of J.A.*, 733 P.2d 1197 (Colo.1987) (interpreting similar statutory language as creating a specific-intent requirement); *State v. Bicknese*, 285 N.W.2d 684 (Minn.1979) (holding that "reasonably construed" language, found in statute, should not be included in jury instruction because it unconstitutionally dilutes state's burden of proof on intent issue).

We believe that, in enacting this state's CSPM and CSCM statutes, our legislature

followed the Michigan approach which does not require proof of a sexual purpose. *People v. Jarman; see also State v. Keyonnie*, 91 N.M. 146, 571 P.2d 413 (1977) (Section 30–9–11 does not require proof of specific intent to commit CSP); *State v. Scarborough*, 55 N.M. 201, 230 P.2d 235 (1951) (specific intent not required as element of proof under prior offense of rape). The statutes contain no mention of sexual purpose as an element of the offenses.

■ In adopting our CSPM and CSCM statutes, our legislature omitted any language similar to the Model Penal Code's "sexual purpose" standard. We interpret this omission and the plain language of the statute to indicate a legislative intent to proscribe conduct involving the "unlawful" penetration of, or contact with, the "intimate parts" of another. *See State v. Lujan*, 103 N.M. 667, 712 P.2d 13 (Ct.App. 1985) (statute must be interpreted to comport with its plain language). A person who unlawfully and intentionally penetrates the genital or anal openings of a child has committed CSPM, whether the person was motivated by a desire to cruelly punish the child or to obtain sexual gratification. This interpretation of the statutes comports with the clear language of the two acts and recognizes the special potential for harm inherent in unlawful contact with, or penetration of, the enumerated body parts, even in cases in which the actor did not intend to arouse or satisfy sexual desire.

Applying the above analysis to the facts detailed above, we determine that both the CSPM and CSCM statutes are not unconstitutionally vague or overbroad; that a person of ordinary intelligence easily could have determined that defendant's conduct fell within the class of acts prohibited by the statutes; that the statutes do not encourage arbitrary or discriminatory prosecution; and that the state presented substantial evidence supporting each of defendant's convictions of CSPM and CSCM.

## II. SUFFICIENCY OF EVIDENCE—DUPLICITY

We turn now to defendant's contention that the trial court erred in convicting him

of both first-degree murder and thirteen of the fourteen separate counts of child abuse resulting in death or great bodily harm. Specifically, defendant argues that the state failed to establish the elements of first-degree murder, including proof that he acted with deliberate intent as required by NMSA 1978, Section 30–2–1(A)(1) (Repl. Pamp.1984).

■ Our review of the record, including the evidence previously summarized herein, indicates that defendant's conviction of first-degree murder is amply supported by the evidence. Proof of the multitude of injuries inflicted upon the child, covering more than 90% of his body, and evidence depicting the nature and severity of the injuries, together with the jail mate's testimony that defendant admitted beating and kicking the child because he was "in the way," provided substantial evidence upon which the court properly could determine that defendant committed each element of the charge of first-degree murder. SCRA 1986, 14–201. *See also State v. Gutierrez*, 88 N.M. 448, 541 P.2d 628 (Ct.App.1975).

Did defendant's multiple convictions and concurrent sentences for child abuse resulting in death or great bodily harm, however, infringe upon the constitutional protections against double jeopardy? § 30–6–1. This issue raises troublesome questions involving the prosecutorial charging pattern relied upon in this case and the nature of the evidence underlying the multiple charges of child abuse.

Resolution of defendant's double jeopardy claims necessarily involves a determination of whether the legislative intent in enacting Section 30–6–1 was such that separate prosecutions and convictions were authorized for each individual injury received by a child under our child abuse statute. *See State v. Ellenberger*, 96 N.M. 287, 629 P.2d 1216 (1981) (multiple punishments violate double jeopardy when the legislature has not authorized multiple punishments); *State v. Smith*, 94 N.M. 379, 610 P.2d 1208

(1980) (multiple criminal acts may be divided into multiple criminal counts if legislative policy so permits).

The applicable statute defining abuse of a child is NMSA 1978, Section 30–6–1(C) (Repl.Pamp.1984)[2]. Prior to its amendment in 1989, the statute read in applicable part:

C. Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be:

(1) placed in a situation that may endanger the child's life or health; or

(2) tortured, cruelly confined or cruelly punished; [or]

(3) exposed to the inclemency of the weather.

... If the abuse results in the child's death or great bodily harm, he is for the first offense, guilty of a second degree felony, and for the second and subsequent offenses, is guilty of a first degree felony.

The United States Supreme Court in *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980), enumerated three separate constitutional protections which arise from the fifth amendment double jeopardy clause, observing that it (1) protects against a second prosecution for the same offense after acquittal; (2) protects against a subsequent prosecution for the same offense after conviction; and (3) *protects against multiple punishments for the same offense. See also Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

Defendant's claim in the instant case involves the third category of protection accorded under state and federal constitutions. In *Ellenberger*, this court quoted from the concurring opinion of Justice Blackmun in *Whalen v. United States*, 445 U.S. 684, 697, 100 S.Ct. 1432, 1440, 63 L.Ed.2d 715 (1980), observing that "the

---

**2.** After the events involved in the present case, the child abuse statute, Section 30–6–1, was amended by 1989 N.M.Laws, Chapter 351, Section 1, increasing the penalty for conviction of

the first offense of child abuse resulting in death or great bodily harm to a first-degree felony.

*only* function the Double Jeopardy Clause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended." (Emphasis in original.) *See also Ohio v. Johnson,* 467 U.S. at 499, 104 S.Ct. at 2540 (protection against cumulative punishments designed to ensure courts' sentencing discretion is confined to limits legislature establishes).

Examination of the charging pattern utilized in the instant case indicates the state charged defendant with three counts of alleged child abuse resulting in death or great bodily harm caused by blows to the head and neck resulting in three different injuries to the brain and spinal cord (Counts 7, 8 & 9), and twelve counts of child abuse resulting in death or great bodily harm caused by injuries to the thorax and abdomen, comprising "lacerations of the heart" (Count 10), "hemorrhage of fat around the heart" (Count 11), "contusions to the lungs" (Count 12), "bleeding into the chest cavity" (Count 13), "lacerations to the liver" (Count 14), "lacerations to the right posterior peritoneum" (Count 15), "lacerations ... or hemorrhage of the mesentery, peritoneum and small bowel" (Count 16), "severe hemorrhage to the pancreas" (Count 17), "extensive hemorrhage to the retroperitoneal, perirenal, periadrenal and retrocecal soft tissues" (Count 18), "hematoma of the right adrenal gland" (Count 19), "blood in the abdomen" (Count 20), and "fracture of the sixth rib, left" (Count 27).[3] Additionally, defendant was charged with child abuse resulting in death or great bodily harm caused by blows inflicted to the child's right arm resulting in "displaced fractures of ... (radius and ulna)" (Count 21).

The trial court found defendant guilty of Count 7, together with those alleged in Counts 10 through 21, 23, 24 and 27, but found him not guilty of Counts 8 and 9 because they were duplicative of Count 7.

Thus, defendant was convicted of a total of fourteen charges of child abuse resulting in death or great bodily harm contrary to Section 30–6–1(C), and two counts of child abuse not resulting in death or great bodily harm.

Under the record before us, we conclude the evidence supports only one of the two charges against defendant of child abuse not resulting in death or great bodily harm and only one charge of child abuse resulting in death or great bodily harm. These offenses merged into the greater offense of first-degree murder. Both the fifth amendment to the United States Constitution and article II, section 15 of the New Mexico Constitution preclude the imposition of multiple punishments for one act or offense. *See State v. Boeglin,* 90 N.M. 93, 559 P.2d 1220 (Ct.App.1977) (a single offense may not be split into many parts and made the subject of multiple prosecutions); *see also State v. Sandoval,* 90 N.M. 260, 561 P.2d 1353, *cert. denied,* 90 N.M. 637, 567 P.2d 486 (1977) (merger is an aspect of double jeopardy and involves a determination of whether more than one offense has occurred); *State v. Altgilbers,* 109 N.M. 453, 786 P.2d 680 (Ct.App.1989).

▮ We hold that defendant's convictions under Counts 23 and 24 for child abuse not resulting in death or great bodily harm constitute a single offense because the evidence does not establish that the two charges occurred at a time period different from each other or that they were inflicted during separate episodes of child abuse other than the incident which resulted in the child's death. The charges of child abuse not resulting in death or great bodily harm merged into the offense of child abuse resulting in death or great bodily harm and first-degree murder. *See State v. DeMary,* 99 N.M. 177, 655 P.2d 1021 (1982); *State v. Jacobs,* 102 N.M. 801, 701 P.2d 400 (Ct.App.1985).

▮ When the facts underlying both offenses are different and they are shown to have occurred at different times, there is

---

**3.** Counts 23 and 24 charged defendant with two counts of child abuse not resulting in death or great bodily harm.

no impediment precluding a defendant from being convicted of both first-degree murder, of child abuse resulting in death or great bodily harm, and of child abuse not resulting in death or great bodily harm.

 Section 30–6–1(C)(2) makes it a crime to "knowingly, intentionally, or negligently," and without justification, cause or permit a child to be "tortured, cruelly confined, or cruelly punished." The charges in this case could have rested with equal validity on the theory that defendant tortured his victim or cruelly punished his victim. In their ordinary senses, these terms connote both (1) multiple acts of violence in a continuous series, and (2) isolated acts of violence. Therefore, we interpret Section 30–6–1(C)(2) as evincing a legislative intent to permit multiple convictions of child abuse under facts such as those here present *only* when each conviction is supported by evidence indicating that: (1) a single abusive act or a continuous series of abusive acts was interrupted and then another act or series was commenced, and (2) each separate act or series of acts was accompanied by the requisite unlawful conduct. Each single act or series of acts then would constitute a separate episode of child abuse.

Although the issue is not directly argued in the present case, we note that the statute creates alternative ways of characterizing the same abusive act or episode. Under the present language of Section 30–6–1(C), if a defendant is found guilty of having both tortured and cruelly punished the victim based on the same underlying abusive act or episode, only one conviction is proper. *See State v. Williams*, 105 N.M. at 216–17, 730 P.2d at 1198–99 (only one conviction of aggravated CSC may be based on a single touching, even if more than one aggravating circumstance is present).

 In the instant case, the state did not charge or offer proof that the acts of child abuse arose as separate and distinct episodes. The pathologist testified concerning three different ages of injury to the pancreas and tissue around the liver: those occurring within 12–24 hours of the child's death; injuries which were several days old; and older injuries in the process of healing. Instead of alleging separate charges of child abuse arising from separate episodes of abuse, the state charged multiple counts of child abuse based upon proof of multiple injuries. Division of the act of child abuse into multiple offenses based solely upon proof of multiple injuries is contrary to legislative intent in enacting Section 30–6–1(C), and violates double jeopardy limitations. *See State v. Boeglin; see also State v. Prouse*, 244 Kan. 292, 767 P.2d 1308 (1989). Moreover, the record indicates that the offense of child abuse resulting in death or great bodily harm merged into the conviction for first-degree murder.

In *Prouse*, the Kansas Supreme Court considered a case similar to the instant case. There defendant was convicted of first-degree murder and child abuse. The court, quoting from *State v. Lucas*, 243 Kan. 462, 759 P.2d 90 (1988), observed: " 'A single assaultive incident of abuse of a child ... which results in the death of the child merges with killing and constitutes only one offense.' " *Id.* at 297, 767 P.2d at 1313.

 Depending on the facts of a particular case, the offense of child abuse resulting in death or great bodily harm, contrary to Section 30–6–1(C), may be a lesser included offense of first-degree murder as defined in Section 30–2–1(A)(1). The former is distinguished from the offense of first-degree murder in that the latter requires proof that the killing was perpetrated with a deliberate intent. *See State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979), *overruled on other grounds, Sells v. State*, 98 N.M. 786, 653 P.2d 162 (1982); NMSA 1978, 14–201. The rule of merger precludes an individual's conviction and sentence for a crime that is a lesser included offense of a greater charge upon which defendant has also been convicted. *See State v. Sandoval.* Although the state properly may charge in the alternative, *State v. Roque*, 91 N.M. 7, 569 P.2d 417 (Ct.App.1977), where defendant is convicted of one or more offenses which have

merged into the greater offense he may be punished for only one. *See State v. Maes,* 100 N.M. 78, 665 P.2d 1169 (Ct.App.1983).

■ The state asserts that, even if defendant's multiple convictions of child abuse were duplicitous or merged into the homicide conviction, because the sentences for child abuse were ordered to be served concurrently with the homicide charge, any error arising from the multiple convictions was rendered harmless. We disagree.

In *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), the Supreme Court held that, when Congress had not provided for separate punishments for the offenses in question, it was error to enter multiple convictions, and that this error was not rendered harmless by imposing concurrent sentences. *See also Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *United States v. Hernandez–Escarsega,* 886 F.2d 1560, 1582 (9th Cir.1989). *Ball* observed:

> The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction,* apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction.... Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

470 U.S. at 864–65, 105 S.Ct. at 1668 (emphasis in original).

■ Based upon the record before us, it was error to impose multiple sentences for child abuse resulting in death or great bodily harm. *See id.; see also State v. Fickes,* 36 Or.App. 361, 584 P.2d 770 (1978). Similarly, it was error to also impose sentences for two counts of child abuse not resulting in death or great bodily harm where the

state did not charge and prove that such acts of child abuse occurred at a time period different from the episode resulting in the child's death. To the extent that *State v. Srader,* 103 N.M. 205, 704 P.2d 459 (Ct.App.1985), and other cases of this court or the court of appeals conflict with this opinion, they are overruled. Where offenses merge, defendant can be charged with each offense, but the double jeopardy clause precludes entry of multiple sentences on such convictions, thereby punishing defendant more than once for the same offense. *Ohio v. Johnson. See Ball v. United States.*

CONCLUSION

Defendant's convictions of first-degree murder, three counts of CSPM, and one count of CSCM are affirmed. For the reasons stated above, the cause is remanded to the trial court with directions to vacate each of the convictions and sentences of child abuse resulting in death or great bodily harm as well as the two convictions and sentences of child abuse not resulting in death or great bodily harm and for entry of an amended judgment and sentence consistent herewith.

IT IS SO ORDERED.

RANSOM and MONTGOMERY, JJ., concur.