# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.                                                                                   **No. 26,811**

**PHILBERT NEZ,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Grant L. Foutz, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Stephanie Erin Brunson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

Defendant appeals the district court's judgment and sentence, entered pursuant to a jury trial, by which Defendant was convicted of two counts of homicide by vehicle while under the influence of intoxicating liquor, one count of great bodily

harm by vehicle while under the influence of intoxicating liquor, and one count of driving under the influence of intoxicating liquor (DWI). Defendant raises six points of error on appeal. First, Defendant argues that his conviction for DWI violates the prohibition against double jeopardy. Second, Defendant argues that the district court improperly enhanced his sentence by the use of a prior DWI conviction issued by a tribal court. Third, Defendant argues that he was denied an impartial jury. Fourth, Defendant argues that the district court improperly denied his motion for a mistrial after the prosecutor asked improper questions of jurors in the venire and misstated the law during voir dire. Fifth, Defendant argues that the prosecutor's questioning of Defendant and comments in closing constituted cumulative, reversible error. Sixth, Defendant argues that the district court erroneously admitted his blood-alcohol content (BAC) test results into evidence. We agree with Defendant that his conviction for DWI is barred by the Double Jeopardy Clause and disagree with Defendant in all other respects. Therefore, we reverse in part and affirm in part.

**I.      DOUBLE JEOPARDY**

The State agrees that the district court properly determined DWI to be a lesser-included offense of vehicular homicide while under the influence of intoxicating liquor and of great bodily harm by vehicle while under the influence of intoxicating

liquor. The jury instructions refer to DWI as the included offense to homicide by vehicle and to great bodily injury by vehicle. We agree with the parties that the DWI offense is subsumed in the greater offenses, as they were charged to the jury. *See State v. Santillanes*, 2000-NMCA-017, ¶ 15, 128 N.M. 752, 998 P.2d 1203 (holding that because the basis for the vehicular homicide conviction was DWI, the defendant's conviction for DWI should be vacated on double jeopardy grounds), *aff'd in part, rev'd in part on other grounds by* 2001-NMSC-018, 130 N.M. 464, 27 P.3d 456; *see also State v. Schackow*, 2006-NMCA-123, ¶ 21, 140 N.M. 506, 143 P.3d 745 (stating that "when an offense may be charged in alternate ways, we look only to the elements of the statutes as charged to the jury and disregard the inapplicable statutory elements" (internal quotation marks and citation omitted)). The parties' disagreement is over whether the appropriate remedy is to merge the sentences for the greater and lesser-included offenses, as the district court did, or to vacate the conviction for the lesser-included offense, which the district court did not do.

Similar to its argument before this Court in *Santillanes*, the State relies on *State v. Wiberg*, 107 N.M. 152, 158, 754 P.2d 529, 535 (Ct. App. 1988), for the proposition that "[u]nder the concept of merger, [a] defendant can properly be *convicted* of both the lesser and greater offenses but can only be *punished* for one of those offenses."

3

We rejected this argument in *Santillanes*, in which we concluded that "the DWI conviction, not merely the sentence, must be vacated." *Santillanes*, 2000-NMCA-017, ¶ 15.

The principle for which the State cites to *Wiberg* was overruled by our Supreme Court in 1990, based on the United States Supreme Court decision in *Ball v. United States*, 470 U.S. 856, 864-65 (1985). *See State v. Pierce*, 110 N.M. 76, 87, 792 P.2d 408, 419 (1990). *Ball* held that the conviction itself for an offense that the Legislature did not intend to punish separately is also an impermissible punishment, even if the sentence for that conviction is merged. *See Pierce*, 110 N.M. at 87, 792 P.2d at 419 ("'The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored.'" (emphasis omitted) (quoting *Ball*, 470 U.S. at 865)). Thus, where "one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both," which *Pierce* established would include conviction for the subsumed offense. *Swafford v. State*, 112 N.M. 3, 14, 810 P.2d 1223, 1234 (1991); *see Pierce*, 110 N.M. at 87, 792 P.2d at 419; *Santillanes*, 2001-NMSC-018, ¶ 28 ("Under *Pierce*, concurrent sentencing does not adequately remedy the imposition of impermissible multiple punishments for a single offense; double jeopardy requires that

4

the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated."). The appropriate remedy under the Double Jeopardy Clause is to vacate the conviction. Accordingly, we reverse and remand to the district court with instructions to vacate Defendant's DWI conviction.

## II.    SENTENCE ENHANCEMENT

Defendant argues that the district court improperly used his prior DWI conviction from a tribal court to enhance the basic sentence for each of his three remaining convictions. *See* NMSA 1978, § 66-8-101(D) (2004) ("A person who commits homicide by vehicle or great bodily harm by vehicle while under the influence of intoxicating liquor or while under the influence of any drug, . . . who has incurred a prior DWI conviction within ten years of the occurrence for which he is being sentenced under this section shall have his basic sentence increased by four years for each prior DWI conviction."). We review the district court's interpretation and application of the DWI-enhancement statute de novo. *See State v. Simmons*, 2006-NMSC-044, ¶ 6, 140 N.M. 311, 142 P.3d 899.

Defendant argues that the Legislature's March 2004 amendment to the DWI statute, redefining "prior DWI conviction" to include convictions from tribal courts, shows that the Legislature did not intend to include tribal court convictions for

enhancement purposes prior to the amendment, which was when Defendant was charged with the driving crimes at issue here. *See* § 66-8-101(E)(1), (2) (1991) (amended 2004) (stating that "prior DWI conviction" includes a prior conviction as defined by Section 66-8-102 or "a prior conviction in New Mexico or any other jurisdiction, territory or possession of the United States when the criminal act is driving under the influence of alcohol or drugs"). In response, the State points out that the tribal court conviction qualifies as a "prior DWI conviction" under NMSA 1978, Section 66-8-102(M) (2003) (amended 2004, 2005, 2007, and 2008), which was the DWI statute in effect at that time. Subsection M stated the following:

> A conviction pursuant to a municipal or county ordinance in New Mexico or a law of any other jurisdiction, territory or possession of the United States *or of a tribe*, where that ordinance or law is equivalent to New Mexico law for driving while under the influence of intoxicating liquor or drugs, and prescribes penalties for driving while under the influence of intoxicating liquor or drugs, shall be deemed to be a conviction pursuant to this section for purposes of determining whether a conviction is a second or subsequent conviction.

2003 N.M. Laws, ch. 164, § 10 (emphasis added).

In his reply brief, Defendant explains that his appellate counsel overlooked this provision of the DWI statute. Defendant concedes that the statutory language cited in the State's answer brief correctly states the law on prior DWI conviction enhancement and agrees with the State that the law was correctly applied to enhance

Defendant's basic sentences. We agree with the parties that the district court properly used Defendant's prior DWI conviction in tribal court to enhance his sentence. *See State v. Davis*, 2007-NMCA-022, ¶ 9, 141 N.M. 205, 152 P.3d 848 (noting that it is the Legislature's power "alone to define the court's jurisdiction over the sentencing of offenders" and therefore a district court lacks jurisdiction to impose a sentence not authorized by statute (internal quotation marks and citation omitted)). We affirm.

**III.    JURY CHALLENGES**

Defendant argues that the district court denied him a fair trial and impartial jury when it refused to strike certain panel members and an alternate for cause, thereby improperly requiring Defendant to use his peremptory challenges. Our Supreme Court has stated that "the trial court is in the best position to assess a juror's state of mind, by taking into consideration the juror's demeanor and credibility. It is within the trial court's discretion as to whether a prospective juror should be excused." *State v. Fry*, 2006-NMSC-001, ¶ 10, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted). "We will not disturb the trial court's decision absent a clear abuse of discretion or a manifest error." *Id.* (internal quotation marks and citation omitted). Defendant's brief fails to set the issue out with clarity. We will do our best to recite what we believe Defendant is raising as the issue.

7

A twelve-person jury was empaneled, with two alternates. Defendant argues in his brief in chief as though he had only four peremptory challenges for the jury panel. In fact, he had five peremptory challenges for the panel and one for the alternates. In regard to the twelve jurors to be empaneled, Defendant exercised only four peremptory challenges. Any complaint by Defendant in regard to use of peremptory challenges to strike alternates does not raise an issue, because he exhausted his sole peremptory and because the alternates were excused after the jury retired. As for the empaneled jury, Defendant requested that only two of the jurors be excused for cause, Vernon Joe and Bernyce Largo. The court denied the requests. In his brief in chief, Defendant appears to complain that, but for his having to use a peremptory challenge to excuse another perspective jury member, Lindsey Comer, as to whom the court again denied Defendant's for-cause challenge, he could have used his peremptory challenge to excuse Mr. Joe or Ms. Largo. Thus, as Defendant appears to argue, the presence of Mr. Joe and Ms. Largo on the jury prejudiced his case, and the fault lay with the district court's erroneous determinations not to excuse them and Mr. Comer for cause.

Defendant used his peremptory challenges as follows and in the following order:

8

| Lindsey Comer | Peremptory used |
| Vernon Joe | No peremptory used; agreed to juror |
| Beverly McKelvey | Peremptory used |
| Patricia Lundstrom | Peremptory used |
| Bernyce Largo | No peremptory used; agreed to juror |
| Janice Holland | Peremptory used |

Defendant never exercised his fifth and remaining peremptory challenge. He presumably chose not to use his remaining peremptory on Mr. Joe or Ms. Largo. Had he done so, the issue would have boiled down to whether the remaining one of these two jurors could have been excused by the peremptory challenge used for Mr. Comer. If both Mr. Joe and Ms. Largo should have been excused for cause, we would have to analyze whether the court erred in denying Defendant's for-cause challenge as to Mr. Comer. If the court did not err as to Mr. Comer and Defendant was not therefore wrongly deprived of a peremptory challenge with regard to Mr. Comer, he would have been armed with two peremptory challenges for use on Mr. Joe and Ms. Largo. Instead of exploring the Comer challenge, however, we will explore whether the district court erred in denying Defendant's challenges for cause with respect to Mr. Joe and Ms. Largo. If the court did not err in denying the challenges for cause as to Mr. Joe and Ms. Largo, Defendant loses his argument because there would be no prejudice to Defendant based on their presence on the jury. We note that Mr. Joe's and Ms. Largo's responses recorded during voir dire are largely inaudible on appeal,

9

and we note that our understanding of the discussion during voir dire comes partly from the tape log and from Defendant's brief. What follows is the best we can glean from the record.

During voir dire, Mr. Joe revealed that his first cousin and a friend's husband died in a drinking-related car accident. The prosecutor asked Mr. Joe if he could accept that Defendant is presumed innocent. Ultimately, Mr. Joe stated that despite his experience with a DWI-related accident, he felt he could still serve on the jury. We cannot say that the district court acted outside of its wide discretion in refusing to strike this prospective juror from the jury pool. *See Fry*, 2006-NMSC-001, ¶ 10.

Ms. Largo's responses during voir dire may be fairly viewed as a closer call. Upon the defense's questioning of each row of prospective jurors, Ms. Largo said that for religious reasons, she does not drink. When asked whether her religious reasons for not drinking would affect her ability to serve as a fair and impartial juror in this case, she responded that she did not know if she could be fair and impartial. The district court judge refused to strike Ms. Largo for cause and stated that he recalled she was "kind of wishy-washy," but that she did not convince the court that she could not be fair and impartial. We note that the defense did not clarify Ms. Largo's comments or inquire further to make a greater showing that she could not serve on the

jury. We further note that, having accepted Mr. Joe as a member of the jury, Defendant still had one peremptory challenge remaining to exclude Ms. Largo but defense counsel chose instead to accept her, stating "we'll keep her, Your Honor."

In this case, it is apparent that the district court gave explanations of the need for the jury to be fair and impartial and asked for candor about any religious or philosophical convictions that might present an obstacle to that goal. The defense was careful to explain the meaning and importance of a fair and impartial jury and asked the prospective jurors row by row about their relevant personal or religious convictions, about their ability to understand and accept the burdens of the parties, and about the presumption of innocence. While it may have been a relatively close call in regard to Mr. Joe and Ms. Largo, we cannot say that the court abused its discretion in denying Defendant's for-cause challenges. *See State v. Isiah*, 109 N.M. 21, 30, 781 P.2d 293, 302 (1989) (holding that where the defendant had two peremptory challenges remaining and complains about two jurors on appeal, one who was rehabilitated and one who was not, the defendant should have exercised his peremptory challenge to strike the latter, and did not demonstrate trial court error), *overruled on other grounds by State v. Lucero*, 116 N.M. 450, 863 P.2d 1071 (1993).

11

It is important to note, as well, that Defendant used his fourth peremptory challenge on Janice Holland, who Defendant has never contended should have been struck for cause. Thus, before he got to Ms. Holland in the selection process, Defendant had two peremptory challenges for use on Mr. Joe and Ms. Largo. Yet he accepted both on the jury.

Even after the last juror was chosen, Defendant never sought to exercise his remaining peremptory challenge and reconsider his acceptance of either Mr. Joe or Ms. Largo. Defendant has not explained why he failed to use his last peremptory challenge. We will not presume that a defendant is prejudiced by a district court's improper refusal to strike jurors for cause where a defendant has not exercised all of the available peremptory challenges. *See Fuson v. State*, 105 N.M. 632, 634, 735 P.2d 1138, 1140 (1987) ("We hold that prejudice is presumed where, as here, a party is compelled to use peremptory challenges on persons who should be excused for cause and that party exercises all of his or her peremptory challenges before the court completes the venire."); *see also Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 12, 141 N.M. 808, 161 P.3d 853 (declining to extend the presumption of prejudice in *Fuson* where the party had a remaining peremptory challenge unexercised and the Court did not know why it was unused); *Isiah*, 109 N.M. at 30, 781 P.2d at 302

(holding that where the defendant contends that the district court should have excused two jurors for cause, but did not exercise two of his remaining peremptory challenges, "he cannot claim prejudice for failure to dismiss prospective jurors").

Lastly, we acknowledge Defendant's complaint that the district court "announced that due to the limited number of persons in the venire that day, he would not be granting very many challenges for cause." Our review of the jury selection process reveals that the district court first mentioned the sparse venire while hearing complaints from prospective jurors about managing jury duty with their employment obligations. The court addressed the venire and stated the following: "Let me just say that we've only got forty-five jurors here, potential jurors, normally I have about sixty or seventy, so I'm going to tell you it's going to be a little tight today for those who are seeking to get excused. I'll just be honest up front about that." The court nevertheless expressed willingness to work with prospective jurors on their job obligations. In the only other instance in which the court mentioned the jury shortage, it addressed the attorneys before they began their for-cause strikes. The court stated, "I'm going to tell you that we're going to get real tight on causes today since we only have forty-four potential jurors here." The defense did not object or otherwise reframe the appropriate analysis for striking prospective jurors for cause. More

importantly, we will not reverse based on the district court's oral comments under these circumstances. *Cf. Ledbetter v. Webb*, 103 N.M. 597, 604, 711 P.2d 874, 881 (1985) (stating that the district court's verbal comments can be used to clarify a finding, but not to reverse a finding). Consistent with our presumption of correctness and in light of our conclusion that Defendant has not clearly demonstrated prejudicial error, we interpret the district court's comments to reflect its intention to be less liberal in striking jurors, which is within the court's proper range of discretion. *See, e.g.*, *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that there is a presumption of correctness in the rulings or decisions of the district court, and the party claiming error bears the burden of showing such error). Defendant has not presented this Court with sufficient facts showing that the district court acted outside of its discretion or that Defendant was prejudiced.

**IV.    PROSECUTOR ERROR IN VOIR DIRE**

Defendant argues that the prosecutor improperly elicited a political speech from a member of the venire and improperly stated the law, which tainted and misled the jury. To the extent Defendant claims there was prosecutorial misconduct in voir dire, our review is for an abuse of discretion. *See State Armendariz*, 2006-NMCA-152, ¶ 21, 140 N.M. 712, 148 P.3d 798; *see also State v. Trujillo*, 2002-NMSC-005, ¶ 49,

14

131 N.M. 709, 42 P.3d 814 (observing that the "trial court is in the best position to evaluate the significance of any alleged prosecutorial errors" (internal quotation marks and citation omitted)). Defendant's arguments require us to "consider whether the prosecutor's improprieties had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Armendariz*, 2006-NMCA-152, ¶ 21 (internal quotation marks and citation omitted).

During voir dire, the prosecutor asked prospective juror and state representative, Ms. Lundstrom, what she believed was the perception in McKinley County of DWI incidents in the community. Ms. Lundstrom responded that she could tell the prosecutor what she had heard in the Legislature. She stated, "we have a tremendous problem with DWI in this county. It's the reason why we're the only county in the state that's allowed a local liquor excise tax option, even though Bernalillo County has tried to get that tax option and their county is larger than [McKinley]." She further explained that the reason for the local liquor excise tax option is because of the high number of incidents of DWI and the need for additional dollars to provide treatment and services.

Defendant contends that this response "not only unfairly bolstered the prosecution's case, but suggested that as taxpayers the jurors were personally

15

victimized by drunk drivers." We are not persuaded that Defendant has shown that, by general questioning Ms. Lundstrom, the prosecutor intended to influence the prospective jurors into believing that they were also victims of drunk drivers by virtue of increased local taxes. Defendant does not indicate that the prosecutor ever argued or commented on this subject. Further, during voir dire, the prosecutor clarified for the venire that "the bedrock of the criminal justice system, is that a defendant, one who is accused, similar to [the] defendant [before them], is presumed innocent" and instructed the venire not to presume that he is guilty of something, because "he is not, he is presumed innocent." In addition, it is reasonable to conclude that the prosecutor, being aware of the high number of incidents of DWI in McKinley County, may have been seeking to expose through his questioning any beliefs held by members of the venire relating to acceptance of drunk driving. While the questioning of Ms. Lundstrom arguably diverted the jury from its duty to decide the case based on the evidence and might have been more carefully phrased, we cannot say that the prosecutor's question or Ms. Lundstrom's response could not both be informative for the parties in voir dire. It is during voir dire that the parties ferret out potential biases of the venire and, naturally, this is when the prospective jurors express their views and any knowledge they may have about the subject matter and the case. *See State v.*

*House*, 1998-NMCA-018, ¶ 41, 124 N.M. 564, 953 P.2d 737 (noting that with the assistance of ably represented parties the district court can "ferret out potential prejudice through the use of a thoughtful and probing jury selection process"), *rev'd on other grounds*, 1999-NMSC-014, 127 N.M. 151, 978 P.2d 967. We also emphasize it was after Ms. Lundstrom's statements were made that the district court and the parties selected those jurors who indicated they could set aside any personal views or biases they may have, hear the evidence, and judge impartially. Further, as we observed earlier in this opinion, the district court and the defense attorney were careful to impress upon the prospective jurors the importance of their ability to judge the evidence impartially.

We also note that the jurors chosen from the venire were instructed after hearing all the evidence that they were the sole judges of the facts of the case, that it was their duty to determine the facts from the evidence produced in court, that neither sympathy nor prejudice should influence their verdict, and that they should not concern themselves with the consequences of their verdict. Without a greater showing that the selected and sworn jury was unable to be impartial due to Ms. Lundstrom's comments, we cannot say that the district court abused its discretion by denying Defendant's motion for a mistrial. We hold that the prosecutor's questioning and the

response by Ms. Lundstrom did not likely have such a persuasive and prejudicial effect on the jury's verdict that Defendant was deprived of a fair trial. *See Armendariz*, 2006-NMCA-152, ¶ 21.

Defendant also complains that the prosecutor misled the venire about the controlling legal standard for DWI. After asking individual members of the venire about their feelings regarding DWI in the community, the prosecutor asked the following: "Do you ladies and gentlemen all agree that here in New Mexico, particularly here at home in our community, one does not have the right to drink and drive? Do we all accept that, ladies and gentlemen? Does anyone have a problem with that?"

We agree with Defendant that the prosecutor inaccurately depicted the offense of DWI. However, defense counsel clarified what the offense prohibits. He stated that the prosecutor made a misleading statement and explained that "there is a distinction in the law. It is ok to drink and drive, but it is not ok to drink and drive while your ability is impaired." He attempted to further clarify by asking whether "the people in the jury box [understood] that the law does not prohibit someone from having some alcohol and driving so long as it does not impair them." He asked, section by section, if everyone was "comfortable with that or if they feel it should be

an absolute prohibition." We believe that defense counsel's explanation and questioning dispelled any misconceptions the venire may have had as a result of the prosecutor's comments. Additionally, the instructions to the jury accurately set forth the elements of DWI and instructed the jury "to apply the law as stated in these instructions to the facts as you find them, and in this way decide the case." We will not presume the jury did otherwise.

## V.   CUMULATIVE ERROR

Defendant argues that cumulative error denied him a fair trial. Under the heading of his cumulative error claim, Defendant refers us only to the prosecutor's questioning of Defendant and his comments during closing argument. We limit our review for cumulative error to Defendant's specific complaints. *See In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct. App. 1992) (stating that this Court will not comb the record to find support for a party's arguments). "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807. The cumulative error doctrine is to be strictly applied and may not be successfully invoked if the record as a whole demonstrates that the defendant

19

received a fair trial, such that "the cumulative effect of any errors was slight." *See State v. Woodward*, 121 N.M. 1, 12, 908 P.2d 231, 242 (1995). Defendant has failed to demonstrate any error in this case.

Defendant complains that the prosecutor improperly invaded the province of the jury when he asked Defendant, "Who's to blame for this wreck . . .?" He also complains without any specific reference to the record that the prosecutor "continued to exhort [Defendant] to take responsibility for his actions."

Defendant fails to show us that his opinion about who holds blame for the car accident is impermissible or does not fall within the lay opinion testimony permitted by the Rules of Evidence. We generally will not consider argument of counsel unsupported by authority. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that an appellate court will not consider an issue if no authority is cited in support of that issue). Further, Rule 11-701 NMRA states as follows:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
>
> A. rationally based on the perception of the witness,
>
> B. helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and

C. not based on scientific, technical or other specialized knowledge within the scope of Rule 11-702 NMRA.

The prosecutor did not ask for an expert opinion; he asked for Defendant's opinion as he perceived the accident, information that was relevant to his defense and the issue of causation. As well, Rule 11-704 NMRA expressly permits testimony on an ultimate issue of fact, that is, "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Id.* Defendant does not show us how the question regarding blame was improper, much less so prejudicial that it deprived him of a fair trial.

Defendant also argues that the prosecutor not only improperly questioned Defendant regarding who caused the accident, but also improperly exhorted him during the State's closing argument to take responsibility for the accident. Defendant claims that together this constituted cumulative error. Defendant makes no citation to the record to support the claim of error regarding closing argument and fails to demonstrate how this was preserved below. This Court "will not search the record to see if an issue was preserved where the defendant [does] not provide appropriate transcript references." *State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829. In order to preserve an issue for appeal, the defendant must make a timely

objection that specifically apprises the lower court of the nature of the claimed error and invokes a ruling thereon. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. On appeal, the reviewing court will not consider issues that are not raised in the court below unless the issues involve matters of jurisdictional or fundamental error. *See  In re Aaron L.*, 2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431. We see no error of any kind.

Finally, both the defense counsel and the prosecutor are given wide latitude in their closing arguments. *See Fry*, 2006-NMSC-001, ¶ 50. We also give the district court "wide discretion in controlling counsel's argument to the jury." *Id.* (internal quotation marks and citation omitted). "Nevertheless, remarks by the prosecutor must be based upon the evidence or be in response to the defendant's argument." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254. In the current case, the prosecutor's closing argument referred to the evidence presented at trial and responded to Defendant's defense theory that he was not impaired by alcohol and not responsible for the deaths or the accident. Under these circumstances, the prosecutor's argument in closing was not improper.

**VI.    ADMISSION OF THE BAC-TEST RESULTS**

Defendant argues that the district court erred by admitting his BAC-test results because the BAC report was not performed in conformity with the Implied Consent Act or Department of Health regulations. Defendant challenges the BAC evidence in two respects. The blood drawer was not present at trial to testify and Defendant's blood was drawn for testing more than two hours after the accident.

**A.    Absence of the Blood Drawer**

Defendant argues that the absence of the blood drawer from trial warrants the exclusion of the BAC-test results because (1) the State made an insufficient showing that the blood was drawn properly and drawn by a qualified person, and (2) the BAC report constituted inadmissible hearsay that violated the Confrontation Clause. We believe that Defendant's challenges to the absence of testimony from the blood drawer are controlled by *State v. Dedman*, 2004-NMSC-037, 136 N.M. 561, 102 P.3d 628.

**1.      Qualifications and Method of the Blood Drawer**

In *Dedman*, our Supreme Court held that the lack of testimony from the blood drawer did not affect the admissibility of the BAC report, where testimony was given by the forensic toxicologist, who tested the blood, and the officer, who witnessed the blood draw. 2004-NMSC-037, ¶¶ 4- 5. Defendant argues that the opinion in *Dedman* does not specifically address the qualifications of the blood drawer and that it improperly presumes without proof that the blood drawer was a qualified nurse. "We are bound by decisions of our state's highest court and must follow a holding of our state supreme court even if the persuasiveness of the opinion has been largely undercut by a subsequent decision of the United States Supreme Court." *Garcia v. Las Vegas Med. Ctr.*, 112 N.M. 441, 446, 816 P.2d 510, 515 (Ct. App. 1991) (citation omitted).  In *Dedman*, the Court held that the absence of the blood drawer from trial and the lack of testimony from the blood drawer as to the method in which he or she drew the blood did not affect the admissibility of the BAC report. 2004-NMSC-037, ¶ 21. We believe that the Court implicitly rejected the argument Defendant makes here, and we must follow its holding.

However, to the extent that we may review Defendant's argument, we disagree that the State made no showing that the blood drawer was a nurse qualified to draw

24

blood. Deputy Kendall of the McKinley County Sheriff's Department, who responded to the scene of the accident, testified that he took the warrant to draw blood to the Gallup Indian Medical Center to have Defendant's blood drawn by a medical professional. Deputy Kendall took Defendant to the secured emergency room to execute the warrant and observed a woman perform the blood draw using the SLD-prepared test kit without complications and in the standard manner. The woman, the deputy stated, was dressed appropriately in hospital scrubs, carried the appropriate medical equipment which included a stethoscope and a hospital identification tag that identified her by picture, name, and title. The deputy identified the report form that accompanied the blood kit and testified that he witnessed the blood drawer sign the report after she drew Defendant's blood, she signed her name as "Jolene Richardson, R.N." The deputy further testified that based on all this information he believed the blood drawer was a nurse and that he had no concern that she was impersonating a nurse.

Defendant has made no showing contradicting the State's foundational proof that his blood was drawn by a nurse. Under these circumstances and in light of *Dedman*, we are not persuaded that the district court abused its discretion by admitting the BAC results into evidence over Defendant's objection.

We also reject Defendant's argument that the lack of testimony from the blood drawer as to the manner in which she drew the blood affects the test result's admissibility. As we stated earlier in this opinion, *Dedman* held that because the manner in which the blood is drawn is not governed by a regulation assuring the accuracy of the BAC test, "compliance with the collection by veni-puncture requirement is not a prerequisite to the admissibility of blood alcohol reports." 2004-NMSC-037, ¶ 21 (internal quotation marks omitted).

**2.      Confrontation Clause**

Defendant also challenges the admission of the BAC-test results without the testimony of the blood drawer on the grounds that the report violates the Confrontation Clause. Defendant concedes that this issue turns on whether the BAC report constitutes testimonial evidence. We agree that it does.

"[T]he Confrontation Clause bars the use of out-of-court statements made by witnesses that are testimonial, unless the witness is unavailable, and the defendant had a prior opportunity to cross-examine, regardless of whether such statements are deemed reliable." *State v. Romero*, 2007-NMSC-013, ¶ 6, 141 N.M. 403, 156 P.3d 694; *see also State v. Paiz*, 2006-NMCA-144, ¶ 30, 140 N.M. 815, 149 P.3d 579 ("As the United States Supreme Court recently clarified, the Confrontation Clause applies

26

exclusively to testimonial statements." (citing *Davis v. Washington*, 547 U.S. 813 (2006)). Our Supreme Court has held that SLD-prepared BAC reports are admissible under the public-record exception to the hearsay prohibition and do not constitute testimonial evidence. *See Dedman*, 2004-NMSC-037, ¶¶ 24, 30. As did the *Dedman* Court, we must also "conclude that Defendant's right of confrontation provided no basis for exclusion of the blood alcohol report." *Id.* ¶ 45.

**B.     Over Two-Hour Delay Between Driving and BAC Test**

In Defendant's appellate briefs, the only mention he makes that there was a delay between the time of driving and the time his blood was taken is in the heading for Issue Six and in a single quoted phrase, among other portions of a regulation, in the New Mexico Administrative Code. Defendant mentions the timing in which blood samples should be collected at the end of his broader argument that the SLD regulations are foundational requirements for admission of the BAC report, which were not met. In sole support of his claim that the BAC report should be excluded because of the delay, Defendant refers us to *State v. Montoya*, 2005-NMCA-078, ¶¶ 18, 22, 137 N.M. 713, 114 P.3d 393, for the proposition that this Court affirmed "the trial court's exclusion of BAC results when the blood was drawn four hours after the defendant was arrested." Defendant makes no particular argument about the

reliability, accuracy or relevance of the BAC-test results that are taken more than two hours after driving or the need for extrapolation evidence, and he does not argue that there was insufficient evidence of Defendant's impairment at the time of driving. Without further elaboration on or development of his argument on appeal, we will not create an argument for Defendant or guess at what his arguments might be. *See Aragon*, 1999-NMCA-060, ¶ 10 (stating that we presume correctness below and that it is the defendant's burden to clearly demonstrate error on appeal); *see also Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (refusing to review an undeveloped and unclear argument on appeal). We note that Defendant did not appeal his conviction on insufficiency of the evidence. We analyze the issue as it is presented in Defendant's briefs and understand the briefs to argue that the timing of the blood test violated the regulation, and on that ground alone, the test should have been excluded. We disagree. The regulation does not strictly require that blood be tested within two hours of arrest. *See* 7.33.2.12(A)(2) NMAC ("The initial blood samples should be collected within two hours of arrest.").

**CONCLUSION**

For the forgoing reasons, we reverse and remand to the district court with instructions to vacate Defendant's conviction for DWI. We affirm on all remaining issues.

**IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL E. VIGIL, Judge**