9 P.3d 668

2000-NMCA-075

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Michael VALLEJOS, Defendant–
Appellant.**

No. 20,265.

Court of Appeals of New Mexico.

July 5, 2000.

Certiorari Denied, No. 26,473,
Aug. 30, 2000.

Patricia A. Madrid, Attorney General, Patricia Gandert, Ass't Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Sheila Lewis, Ass't Appellate Defender, Santa Fe, for Appellant.

## OPINION

PICKARD, Chief Judge.

{1} This case serves to remind us that "[t]he prohibition against double jeopardy 'is not one rule but several, each applying to a different situation; and each rule is marooned in a sea of exceptions.'" *State v. Medina,* 87 N.M. 394, 396, 534 P.2d 486, 488 (Ct.App.1975) (quoting *Comment, Twice in Jeopardy,* 75 Yale L.J. 262, 263 (1965–66)). Today, we address two aspects of the rule proscribing multiple punishment for the

same offense, both of which demonstrate the truth of these words, written over thirty-five years ago.

{2}   Defendant appeals his convictions for attempted first degree murder, conspiracy to commit first degree murder, aggravated battery inflicting great bodily harm, conspiracy to commit aggravated battery, and criminal solicitation to commit murder. On appeal, he argues that his state and federal constitutional rights to be protected from double jeopardy were violated by (1) his convictions for both attempted first degree murder and aggravated battery and (2) his convictions for both criminal solicitation and conspiracy to commit murder, although the sentences for these two offenses were merged. He also asserts (3) insufficiency of the evidence to support more than one conspiracy conviction, (4) trial court error in admitting the testimony of two witnesses not timely disclosed by the State, and (5) cumulative error. We affirm on issues (1), (4), and (5), reverse on issues (2) and (3), and remand for further proceedings consistent with this opinion.

## I.   FACTS

{3}   On January 20, 1996, Defendant's nephew Chris Sedillo entered a Taco Bell in Los Lunas, New Mexico, and shot Sybil Saiz (Victim), who was standing behind the counter, once in the lower back at close range. Although seriously injured, Victim survived the shooting. Sedillo shot Victim with the help and encouragement of Defendant. Defendant blamed Victim for the shooting of his son Michael Hurtado and sought revenge against Victim. Before the shooting at the Taco Bell, Defendant had confronted Victim and her boyfriend, Robert Castillo, on another occasion in a bank parking lot and at a park and had discharged his gun several times. Defendant had learned that Castillo also had beaten up his son in a store parking lot and wanted to exact revenge.

{4}   At trial, the State's theory of the case was that Defendant solicited, conspired with, and aided and abetted Sedillo in the shooting and attempted murder of Victim at Taco Bell. Defendant was convicted by a jury of attempted first degree murder, aggravated battery with great bodily harm, conspira-

cy to commit first degree murder, conspiracy to commit aggravated battery, and criminal solicitation.

## II.   DISCUSSION

### A.   Double Jeopardy

■   {5}   The Double Jeopardy Clauses of the New Mexico and the United States Constitutions guarantee that no person shall be "twice put in jeopardy" for the same offense. *See* N.M. Const. art. II, § 15; U.S. Const. amend. V. These guarantees protect an individual against successive prosecutions for the same offense after an acquittal or conviction and against multiple punishments for the same offense. *See Swafford v. State,* 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). This case implicates Defendant's right to be protected from multiple punishments for the same offense.

### 1.   Convictions for Both Attempted Murder and Aggravated Battery

{6}   Defendant argues that his convictions for both attempted first degree murder and aggravated battery unconstitutionally subjected him to double jeopardy. New Mexico courts apply the two-part test from *Swafford,* 112 N.M. at 13–15, 810 P.2d at 1233–35, to determine whether convictions under different criminal statutes in the same trial violate the constitutional guarantee against double jeopardy. We first determine "whether the conduct underlying the offenses is unitary, *i.e.,* whether the same conduct violates both statutes." *Id.* at 13, 810 P.2d at 1233. If the conduct is not unitary, there is no double jeopardy violation, and our analysis ends. *See id.* at 14, 810 P.2d at 1234.

{7}   If the conduct is unitary, however, we proceed to the second part of the *Swafford* analysis and determine whether the legislature intended to create separately punishable offenses for the unitary conduct. *See id.* Absent a clear expression by the legislature to impose multiple punishments, we apply the strict elements test from *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to make an initial, presumptive determination of legislative intent. *See Swafford,* 112 N.M. at 14, 810 P.2d

at 1234; *see also State v. Campos,* 1996–NMSC–043, ¶ 20, 122 N.M. 148, 921 P.2d 1266 (noting that strict elements test provides tool for inferring legislative intent). If each offense contains an element the other does not, one offense does not subsume the other, and we presume the legislature intended to punish the offenses separately. *See Swafford,* 112 N.M. at 14, 810 P.2d at 1234. We then consider other indicia of legislative intent, including the language, history, and subject of the statutes; the social evils sought to be addressed by each statute; and the quantum of punishment prescribed by each statute. *See id.* at 14–15, 810 P.2d at 1234–35. If these factors reinforce the presumption that the legislature intended to punish offenses separately, we conclude that the convictions under different statutes do not violate the constitutional protection against double jeopardy.

{8} Relying on recent felony murder cases, including *State v. Varela,* 1999–NMSC–045, 128 N.M. 454, 993 P.2d 1280, *State v. Cooper,* 1997–NMSC–058, 124 N.M. 277, 949 P.2d 660, and *Campos,* 1996–NMSC–043, 122 N.M. 148, 921 P.2d 1266 Defendant argues that the crime of aggravated battery is subsumed within the crime of attempted first degree murder, and therefore his convictions for both offenses violate double jeopardy. We believe Defendant's reliance on these cases is misplaced because they were addressing a different question of legislative intent.

{9} Defendant first offers *Cooper* for the proposition that "one assaultive act cannot support a conviction for both aggravated battery and attempted murder." However, *Cooper* does not stand for this proposition. Cooper challenged his convictions for felony murder and aggravated battery on double jeopardy grounds; armed robbery was the underlying felony for the felony murder conviction. *See Cooper,* 1997–NMSC–058, ¶ 53, 124 N.M. 277, 949 P.2d 660. Cooper argued that because the conduct underlying the aggravated battery was the same conduct that caused the victim's death, he could not be twice convicted for the same act. *See id.* ¶ 54. The State argued that the battery, consisting of hitting the victim over the head,

was distinct from the struggle that resulted in the victim's death. *See id.* Although Cooper's arguments raised the question of whether battery is always a lesser included offense of second degree murder when the underlying conduct is unitary, the New Mexico Supreme Court did not reach the issue because it determined that the acts constituting the battery and the second degree murder were not unitary. *See id.* ¶ 58. Therefore, the *Cooper* court never addressed the issue on which Defendant relies.

{10} Defendant also relies on *Varela* and *Campos,* both of which discuss the felony murder doctrine and the need for the predicate felony to be independent of or collateral to the homicide. The requirement of an independent felony is known as the collateral felony doctrine. *See Campos,* 1996–NMSC–043, ¶ 8, 122 N.M. 148, 921 P.2d 1266. Under this doctrine, the predicate felony cannot be a lesser included offense of second degree murder. *See id.* ¶ 19. If the predicate felony is a lesser included offense of second degree murder, then the felony murder rule does not apply. *See id.* New Mexico adopted the collateral felony limitation to prevent the unreasonable expansion of the felony murder doctrine and to preclude the possibility that most second degree murders might be raised to first degree murders simply by charging the initial assaultive act as the predicate felony in a felony murder charge, a result the legislature could not have intended. *See id.*

{11} Specifically, Defendant points to language in both *Varela* and *Campos* stating that one cannot be convicted of felony murder if the underlying felony is aggravated assault or aggravated battery because it would be "impossible to commit second degree murder without committing some form of both aggravated assault and aggravated battery." *Varela,* 1999–NMSC–045, ¶ 17, 128 N.M. 454, 993 P.2d 1280; *Campos,* 1996–NMSC–043, ¶ 23, 122 N.M. 148, 921 P.2d 1266. Defendant argues that this language supports the conclusion that aggravated battery is a lesser included offense of second degree murder for purposes of double jeopardy analysis. Therefore, he argues, under the same analysis, aggravated battery is a

lesser included offense of attempted first degree murder, and his conviction for aggravated battery must be vacated.

{12} We determine that the felony murder cases are inapposite for three reasons. First, although New Mexico courts also employ the strict elements test from double jeopardy cases to determine whether a felony is collateral to second degree murder and thus may serve as a predicate felony for the charge of felony murder, *see Campos*, 1996–NMSC–043, ¶ 22, 122 N.M. 148, 921 P.2d 1266 the purpose behind the test differs in each context. Under collateral felony analysis, the purpose of the strict elements test is to determine whether the circumstances surrounding a second degree murder are made sufficiently grave by virtue of the accompanying felony to justify being elevated to first degree murder status. The courts utilize the strict elements test to limit the circumstances under which second degree murder may be so enhanced, and in that context the test is a means of construing legislative intent. But the question of legislative intent in that circumstance is divining when the legislature intended a second degree murder to be converted to a first degree murder. The central concern in that circumstance is preserving the historic delineation between the two degrees of murder that our courts and legislature have carefully guarded over the years. *See Campos*, 1996–NMSC–043, ¶ 10, 122 N.M. 148, 921 P.2d 1266 (referring to reason for collateral or independent felony requirement); *State v. Ortega*, 112 N.M. 554, 563, 817 P.2d 1196, 1205 (1991) (imposing mens rea requirement for felony murder); *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (emphasizing distinction between first and second degree murder). We also utilize the strict elements test as a vehicle to determine legislative intent in the double jeopardy/multiple punishment context. But the purpose and goals of the test are significantly different in that context. For double jeopardy, we determine whether the legislature contemplated any restriction on multiple punishments for the same criminal act. In many cases, we conclude that the legislature has not imposed any such limits. By contrast, "in collateral felony analysis, we are not examining whether the defendant

may be punished separately for felony murder and for the predicate felony; rather we are determining if the felony murder doctrine applies at all." *Campos*, 1996–NMSC–043, ¶ 22 n. 3., 122 N.M. 148, 921 P.2d 1266 Accordingly, whatever may be said about whether a specific crime is subsumed within second degree murder for purposes of the collateral felony doctrine, it bears little or no systemic relationship to the analysis for double jeopardy/multiple punishment purposes. The two doctrines are distant cousins if anything, and one acts at one's peril in drawing superficial parallels between the two. We observe that this is hardly the first time our courts have segregated the use and application of the strict elements test according to its purpose and discouraged cross-comparison. *See State v. Meadors*, 121 N.M. 38, 41–42, 908 P.2d 731, 734–35 (1995) and the treatment of *Meadors* in *Campos*, 1996–NMSC–043, ¶¶ 20–23, 122 N.M. 148, 921 P.2d 1266.

{13} Second, because the questions to be addressed differ in scope, the test is applied differently in each context. In double jeopardy cases, where an offense is defined by a statute providing several alternatives, "we focus on the legal theory of the case and disregard any inapplicable statutory elements." *State v. Cowden*, 1996–NMCA–051, ¶ 7, 121 N.M. 703, 917 P.2d 972 (Ct.App. 1996); *see also State v. Fuentes*, 119 N.M. 104, 888 P.2d 986 (Ct.App.1994) (discussing how to apply strict elements test in multiple punishment context with an alternative elements of statutory crimes). By contrast, in analyzing cases pursuant to the collateral felony doctrine, courts apply the strict elements test "in the abstract." *Varela*, 1999–NMSC–045, ¶ 17, 128 N.M. 454, 993 P.2d 1280. Thus, in *Varela*, the Court observed that it would be impossible to commit second degree murder without committing some form of both aggravated assault and aggravated battery, even though "some statutory definitions of aggravated assault and aggravated battery may include one or more statutory elements that are not elements of second degree murder." *Id.* In other words, a felonious assault or battery will always be a lesser included offense of second degree murder under collateral felony analysis, but

under double jeopardy/multiple punishment analysis it may or may not be, depending upon the legal theories of the crime actually charged and the elements of the statute advanced at trial.

{14} Finally, the collateral felony test differs from the double jeopardy inquiry in that it considers only whether the predicate felony is a lesser included offense of second degree murder, not first degree murder. *See Campos,* 1996–NMSC–043, ¶ 22 n. 3, 122 N.M. 148, 921 P.2d 1266. In this case, the issue is not whether, in the abstract, aggravated battery is a lesser included offense of second degree murder, but whether aggravated battery with great bodily harm is a lesser included offense of attempted first degree murder. Because the elements of second degree murder and attempted first degree murder are different, the discussion in *Varela* and *Campos* would not be dispositive. Therefore, for all the reasons discussed above, we hold that the felony murder cases are inapplicable in deciding Defendant's double jeopardy claim. Rather, we apply the two-pronged *Swafford* test to the particular facts and legal theories of this case.

{15} Applying *Swafford* to this case, we conclude that Defendant's convictions for both attempted first degree murder and aggravated battery do not violate double jeopardy principles. The State concedes that the underlying conduct was unitary, and we agree. Therefore, we turn to the second part of the *Swafford* analysis and determine whether the legislature intended to create separately punishable offenses for the unitary conduct. *See id.* at 14, 810 P.2d at 1234. We find no provision in the statutes explicitly providing for multiple punishments. We thus apply the strict elements test from *Blockburger* to ascertain legislative intent. In comparing the statutory elements of the offenses, if "one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes— punishment cannot be had for both." *Id.* at 14, 810 P.2d at 1234.

{16} Defendant was charged as an accessory to attempted first degree murder. Attempted first degree murder requires proof that the defendant (1) committed an overt act in furtherance of murder but failed to effect its commission and (2) intended to commit first degree murder, which is defined as a killing with the deliberate intention to take away the life of the victim. *See* NMSA 1978, § 30–2–1(A) (1994); NMSA 1978, § 30–28–1 (1963); UJI 14–2801 NMRA 2000; UJI 14–201 NMRA 2000. Defendant was also charged as an accessory to aggravated battery inflicting great bodily harm. Aggravated battery with great bodily harm requires proof that (1) the defendant touched or applied force to the victim (2) with the intent to injure the victim in a way that would likely result in death or great bodily harm to the victim, and (3) the victim suffered great bodily harm. *See* NMSA 1978, § 30–3–5(A) and (C) (1969); UJI 14–323 NMRA 2000; *see also State v. Carrasco,* 1997–NMSC–047, ¶¶ 27–28, 124 N.M. 64, 946 P.2d 1075.

{17} A comparison of the elements of both offenses as charged against Defendant reveals that each offense contains at least one element the other does not. Attempted first degree murder requires an overt act in furtherance thereof, but does not require any particular result other than the survival of the victim. By contrast, aggravated battery requires a touching or application of force that results in great bodily harm to the victim. Therefore, attempted first degree murder can be committed in ways that do not necessarily include aggravated battery, and thus the statutory elements for attempted murder do not subsume the elements of aggravated battery. Accordingly, we presume the legislature intended to punish the offenses separately.

{18} This presumption, however, can be rebutted by a showing of contrary legislative intent. *See Cowden,* 1996–NMCA–051, ¶ 11, 121 N.M. 703, 917 P.2d 972. Thus, we consider other indicia of legislative intent, including the language, history, and subject of the statutes; the social evils sought to be addressed by each statute; and the quantum of punishment. *See id.* Construing the social evils addressed by each statute narrowly, *see id.* ¶ 12, we conclude that the statutes in question protect different social interests. The prohibition against attempted first degree murder is directed at protecting a per-

son's life from willful and deliberate destruction by another. The aggravated battery statute is directed at preserving the integrity of a person's body against serious injury. Attempted murder requires the deliberate intent to kill the victim. Aggravated battery requires only the intent to injure the victim. *Cf. id.* (analyzing the different social evils addressed by assault with intent to murder and aggravated battery with a deadly weapon). Moreover, attempted first degree murder is a second degree felony, *see* § 30–28–1(A), whereas aggravated battery is a third degree felony, *see* § 30–3–5(C). After considering the various indicia of legislative intent, we conclude that the legislature intended separate punishments for the offenses.

{19} In arguing that there was no double jeopardy violation, the State points to *State v. Martinez,* 120 N.M. 677, 680, 905 P.2d 715, 718 (1995), in which our Supreme Court discussed, in dicta, the very double jeopardy issue before us in this case: "whether aggravated battery is subsumed within the crime of attempted murder when the conduct is unitary." The *Martinez* court suggested that, under a *Swafford* analysis, aggravated battery is not a lesser included offense of attempted murder, and therefore the defendant could be punished for both offenses despite unitary conduct. *See id.* at 677, 905 P.2d at 718. Even though the analysis in *Martinez* was not essential to the decision of that appeal, it is helpful to our analysis, and we apply it to this case in support of our conclusion. Therefore, we hold that Defendant's convictions for both attempted first degree murder and aggravated battery do not constitute double jeopardy.

### 2. Merger of Criminal Solicitation and Conspiracy to Commit Murder for Sentencing Purposes

{20} The trial court entered an amended judgment and sentence imposing concurrent sentences for the crimes of criminal solicitation and conspiracy to commit murder. Defendant argues, pursuant to *State v. Pierce,* 110 N.M. 76, 87, 792 P.2d 408, 419 (1990), that the trial court's merger of the two offenses for sentencing purposes violates his right to be protected from double jeopardy.

{21} The State attempts to distinguish *Pierce* and argues that *State v. Shade,* 104 N.M. 710, 724, 726 P.2d 864, 878 (Ct.App. 1986), *overruled on other grounds by State v. Olguin,* 118 N.M. 91, 98, 879 P.2d 92, 99 (Ct.App.1994), directly controls this case. *Shade* expressly acknowledges that the trial court may make a formal adjudication of guilt as to both conspiracy to commit and solicitation of murder, but must merge the offenses for purposes of sentencing under NMSA 1978, § 30–28–3(D) (1979). *See id.* at 724, 726 P.2d at 878. Therefore, the State argues, the convictions and merger of the sentences were proper. We conclude that Defendant's criminal solicitation conviction must be vacated on double jeopardy grounds in light of Section 30–28–3(D) and *Pierce,* which appears to overrule that portion of *Shade* on which the State relies.

{22} Here, the parties do not dispute that the conduct underlying both the solicitation and the conspiracy to commit murder is the same. Therefore, we examine the language of the statutes for an expression of legislative intent to impose multiple punishments for the conduct. *See Swafford,* 112 N.M. at 14, 810 P.2d at 1234. Here, the pertinent statute is Section 30–28–3(D). It provides:

A person is not liable for criminal solicitation when his solicitation constitutes conduct of a kind that is necessarily incidental to the commission of the offense solicited. When the solicitation constitutes a felony offense other than criminal solicitation, which is related to but separate from the offense solicited, the defendant is guilty of such related felony offense and not of criminal solicitation. Provided, a defendant may be prosecuted for and convicted of both the criminal solicitation as well as any other crime or crimes committed by the defendant or his accomplices or coconspirators, or the crime or crimes committed by the person solicited.

{23} The last sentence of Section 30–28–3(D) expressly authorizes multiple prosecutions and convictions for criminal solicitation "as well as any other crime or crimes committed by the defendant." However, the first two sentences provide that a person

shall *not* be "liable" for and "guilty" of criminal solicitation when the solicitation is necessarily incidental to the commission of the offense solicited or when it constitutes a felony offense other than criminal solicitation which is related to but separate from the offense solicited. *See* § 30–28–3(D).

{24} This case requires us to interpret the seemingly incongruous provisions of Section 30–28–3(D) to determine whether the legislature intended multiple convictions and punishments for the offenses of criminal solicitation and conspiracy to commit murder. *See State v. Ogden,* 118 N.M. 234, 242, 880 P.2d 845, 853 (1994) (stating that, in construing statute, we must determine and effectuate intent of legislature, using plain language of the statute as primary indicator of intent). Criminal statutes defining criminal conduct or providing for more severe punishment should be strictly construed. *See id.* When ambiguity persists regarding the intended scope of a criminal statute, we apply the rule of lenity which requires us to interpret the statute in favor of the defendant. *See id.*

{25} As noted in *Shade,* this Court previously interpreted the provisions of Section 30–28–3(D) in *State v. McCall,* Vol. 22, No. 41, SBB 1091 (Ct.App.1983), *rev'd on other grounds,* 101 N.M. 32, 677 P.2d 1068 (1984), which held that conspiracy and solicitation convictions arising from the same conduct must be merged for purposes of sentencing. *See Shade,* 104 N.M. at 724, 726 P.2d at 878; *see also State v. Pinson,* 119 N.M. 752, 754, 895 P.2d 274, 276 (Ct.App.1995). Because this Court's first opinion in *State v. McCall,* 101 N.M. 616, 686 P.2d 958 (Ct.App.1983), was withdrawn from publication, and the second opinion, filed on September 6, 1983, was not published outside the State Bar Bulletin, *see Shade,* 104 N.M. at 724 n. 2, 726 P.2d at 878 n. 2, we attach the pertinent portions of the second *McCall* opinion as an appendix to this opinion.

{26} In *McCall,* the defendant argued that Section 30–28–3(D) prohibits findings of guilt on charges of both solicitation and conspiracy. After analyzing the subsection sentence by sentence, this Court concluded that, under the second sentence, "if the solicitation constitutes conspiracy, defendant would be guilty of the conspiracy and not of the solicitation." *McCall,* Vol. 22, No. 41, SBB at 1101. However, we went on to conclude that because the last sentence expressly authorizes all offenses covered by the first two sentences to be submitted to the jury, multiple convictions for both conspiracy and solicitation were permissible so long as the defendant was not separately sentenced for both offenses. *See id.* at 1102. In short, the *McCall* court did "not see any barrier to a formal adjudication of guilt on both counts so long as there is no separate sentence on each count." *Id.*

{27} When *McCall* was decided, however, habitual liability was perceived as the only possible adverse collateral consequence of multiple convictions for the same offense where concurrent sentences were imposed and, under the facts of *McCall,* habitual liability was foreclosed by statute. *See id.* The merger doctrine has evolved considerably since *McCall* and *Shade.* In *Pierce,* our Supreme Court held that the imposition of concurrent sentences did not render multiple convictions for the same offense harmless. *See Pierce,* 110 N.M. at 87, 792 P.2d at 419. Quoting from *Ball v. United States,* 470 U.S. 856, 864–65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), the *Pierce* court recognized that, besides habitual liability, other potential adverse collateral consequences flow from allowing a separate conviction to stand, including delay in the defendant's eligibility for parole, the use of the second conviction for impeachment purposes, and general social stigma. *See Pierce,* 110 N.M. at 87, 792 P.2d at 419; *State v. Barr,* 1999–NMCA–081, ¶ 12, 127 N.M. 504, 984 P.2d 185. Therefore, according to *Pierce,* and contrary to *McCall* and *Shade,* double jeopardy resulting from multiple convictions for the same offense is not cured by the merger of the offenses for sentencing purposes.

{28} Construing Section 30–28–3(D) narrowly and reasonably in light of the social evil it seeks to address, *see Ogden,* 118 N.M. at 242–43, 880 P.2d at 853–54, we interpret the last sentence to mean that the charges of both criminal solicitation and conspiracy to commit murder can be prosecuted

and submitted to the jury which can convict Defendant of both charges; however, according to the first two sentences, Defendant will not be held "liable" or "guilty" of criminal solicitation upon formal adjudication or entry of judgment and sentence by the trial court. *See State v. Mondragon*, 107 N.M. 421, 424, 759 P.2d 1003, 1006 (Ct.App.1988) ("Giving conviction its ordinary meaning, ... we find that New Mexico defines conviction as the finding of guilt, even before formal adjudication by the court, much less before sentencing."); *cf. State v. Castillo*, 105 N.M. 623, 624, 735 P.2d 540, 541 (Ct.App.1987) (stating that a conviction, under habitual criminal statute, is simply finding of guilt and does not include imposition of sentence). Therefore, because a separate adjudication of guilt as to the crime of criminal solicitation is not permitted under Section 30–28–3(D) and violates double jeopardy under the approach in *Pierce*, we determine that Defendant's conviction for criminal solicitation must be vacated.

## B. Insufficiency of the Evidence to Support More than One Conspiracy Conviction

{29} Initially, Defendant argued that his convictions for both conspiracy to commit murder and conspiracy to commit aggravated battery, based on proof of a single agreement, violated his right to be protected from double jeopardy. This issue was later reframed as one of insufficiency of the evidence to support more than one conspiracy conviction. The State argues that Defendant waived the sufficiency issue by not preserving it in the trial court. However, as Defendant points out, this Court may review the sufficiency of the evidence to support a conviction, even though raised for the first time on appeal, because it involves a question of fundamental error or the fundamental rights of the defendant. *See* Rule 12–216(B)(2) NMRA 2000; *State v. Stein*, 1999–NMCA–065, ¶ 9, 127 N.M. 362, 981 P.2d 295. Therefore, we consider Defendant's claim of insufficiency of the evidence.

{30} Defendant argues that because there was proof of only an agreement to murder Victim, and no separate agreement to inflict great bodily harm on Victim, his conviction for conspiracy to commit aggravated battery must be reversed for insufficiency of the evidence. The State concedes that the evidence supports only a single conspiracy to commit murder. Based on the undisputed evidence, we hold that the evidence is insufficient to support Defendant's conviction for conspiracy to commit aggravated battery, and therefore the conviction must be reversed. *See State v. Tisthammer*, 1998–NMCA 115, ¶ 27, 126 N.M. 52, 966 P.2d 760 ("The number of agreements to break the law is the determining factor in deciding the number of conspiracies."); *cf. State v. Castillo-Sanchez*, 1999–NMCA–085, ¶ 31, 127 N.M. 540, 984 P.2d 787 (reversing conspiracy to commit fraud where there was no evidence that it was distinct from conspiracy to commit murder).

## C. Late Disclosure of Witnesses

{31} Defendant argues that the trial court erred in refusing to exclude the testimony of prosecution witnesses Maria Alvarado and Raul Sedillo for late disclosure by the State. Defendant also contends that the trial court's admission of the testimony violated his constitutional right to confront and cross-examine witnesses. However, the State points out, and Defendant does not dispute, that he never objected in the trial court on the grounds that his right to confront and cross-examine witnesses was violated. Instead, Defendant objected solely on the grounds of an alleged discovery violation by the State. Because it appears the constitutional argument was not raised below, we do not address it on appeal. *See* Rule 12–216(A) (stating that ruling of trial court must be fairly invoked to preserve question for review); *State v. Lucero*, 104 N.M. 587, 590–91, 725 P.2d 266, 269–70 (Ct.App.1986) (holding that denial of right to confrontation may not be raised for first time on appeal, and hearsay objections were not sufficiently specific to alert trial court to claimed constitutional error).

{32} We do, however, review the trial court's decision allowing the witnesses to testify for abuse of discretion. *See State v. Woodward*, 121 N.M. 1, 4, 908 P.2d

231, 234 (1995). " 'An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." ' *Id* . (quoting *State v. Apodaca*, 118 N.M. 762, 770, 887 P.2d 756, 764 (1994)). "Failure to disclose a witness' identity prior to trial in itself is not grounds for reversal." *State v. Griffin*, 108 N.M. 55, 58, 766 P.2d 315, 318 (Ct.App.1988). Defendant has the burden of showing that he was prejudiced by the untimely disclosure. *See id.* Even assuming a discovery violation by the State, we conclude the trial court did not abuse its discretion in allowing both witnesses to testify at the trial.

{33} Defendant claims that he learned for the first time during voir dire that the State intended to call Ms. Alvarado and Mr. Sedillo as witnesses at the trial. However, it appears that Defendant knew approximately five days before trial that the prosecution intended to call Ms. Alvarado as a witness. At that time Defendant objected and requested that the trial court exclude Ms. Alvarado's testimony or allow defense counsel additional time to prepare for the witness. The trial court denied Defendant's motion, but did order the State to make Ms. Alvarado immediately available to the defense which it did the next morning.

{34} On review, we cannot say that the trial court's ruling was an abuse of discretion. *See* Rule 5–505(B) NMRA 2000 (granting trial court broad discretion to address non-disclosure of evidence); *State v. Deutsch*, 103 N.M. 752, 756, 713 P.2d 1008, 1012 (Ct. App.1985) ("Remedies for violation of discovery rules or orders are discretionary with the trial court."). Ordering the prosecution to make Ms. Alvarado available to the defense several days before the trial was reasonable and well within the trial court's discretion under Rule 5–505(B), which, among other things, permits the trial court to "enter such order as it deems appropriate under the circumstances."

{35} Moreover, as the State points out, Defendant has not met his burden of showing prejudice from the late disclosure. Defendant acknowledges that the State made one witness available prior to trial. He does not indicate why the time provided was insufficient, nor does he adequately explain how his cross-examination of the witnesses could have been improved without the late disclosure. *See Griffin*, 108 N.M. at 58, 766 P.2d at 318. Although Defendant claims that he was prevented from interviewing and obtaining other witnesses, he does not identify any such potential witnesses, nor does he indicate whether their testimony would have contradicted Ms. Alvarado's trial testimony. Moreover, with respect to Mr. Sedillo, it appears that Defendant had some notice of his proposed testimony and did not specifically object to that portion of his testimony which he now claims was prejudicial. *See* Rule 12–216(A). Therefore, because we find no abuse of discretion or prejudice, we affirm the trial court's admission of both witnesses' testimony.

**D. Cumulative Error**

{36} Lastly, Defendant asserts cumulative error based on all claimed errors. We determine that the cumulative error doctrine does not apply in this case. Cumulative error requires a number of errors, each harmless in itself. *See State v. La Madrid*, 1997–NMCA–057, ¶ 24, 123 N.M. 463, 943 P.2d 110 ("Several errors that would in themselves be harmless may together create reversible error if they deprived the defendant of a fair trial."); *see also State v. Martin*, 101 N.M. 595, 601, 686 P.2d 937, 943 (1984) (stating that cumulative error occurs when "the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial"). In this case, we are reversing, in part, based on two individual errors: insufficiency of the evidence and double jeopardy. We further note that Defendant's general objections to overcharging were addressed by this Court in *State v. Orgain*, 115 N.M. 123, 125–26, 847 P.2d 1377, 1379–80 (Ct.App.1993). In that case, we recognized that reversal is the appropriate relief where the defendant claims overcharging and where we find insufficiency of the evidence or merger as to certain convictions. *See id.* at 126, 847 P.2d at 1380.

**III.** *CONCLUSION*

{37} For the reasons discussed above, we affirm the convictions for attempted first de-

gree murder, aggravated battery resulting in great bodily harm, and conspiracy to commit murder. We reverse the conviction for conspiracy to commit aggravated battery. We remand to the trial court with instructions to vacate the conviction for criminal solicitation and to resentence Defendant consistently with this opinion.

{38} **IT IS SO ORDERED.**

BOSSON and KENNEDY, JJ., concur.

*Appendix*

*State v. McCall,* No. 5,922 (N.M.Ct.App. Sept. 6, 1983), Vol. 22, No. 41 SBB 1091 (Oct. 13, 1983).

**MARY C. WALTERS, Chief Judge.**

. . . .

### C. Solicitation and Conspiracy

Defendant next claims that failure to prove the underlying elements of the crimes of fraud and securities fraud vitiates the crimes of solicitation and conspiracy to commit those crimes. We disagree; one may conspire to commit a crime without any success at all, and still be found guilty. *See State v. Lopez,* 81 N.M. 107, 464 P.2d 23 (Ct.App.1969) [*overruled on other grounds by State v. Ruffins,* 109 N.M. 668, 671, 789 P.2d 616, 619 (1990) ]. The offense of conspiracy is complete when the agreement is reached. *State v. Davis,* 92 N.M. 341, 587 P.2d 1352 (Ct.App.1978). It was not defendant's or his principals' fault that no injury or damage was suffered in this case so as to preclude convictions on the fraud and securities fraud counts; the evidence discloses their complete disregard for any detrimental consequences to others as a result of their misrepresentations. They conspired to obtain an advantage by misrepresentation even if others were injured or damaged in the process.

Defendant urges further, however, that Section 30–28–3(D) prohibits findings of guilt on charges of both solicitation and conspiracy. That subsection reads:

D. A person is not liable for criminal solicitation when his solicitation constitutes conduct of a kind that is necessarily incidental to the commission of the offense solicited. When the solicitation constitutes a felony offense other than criminal solicitation, which is related to but separate from the offense solicited, the defendant is guilty of such related felony offense and not of criminal solicitation. Provided, a defendant may be prosecuted for and convicted of both the criminal solicitation as well as any other crime or crimes committed by the defendant or his accomplices or coconspirators, or the crime or crimes committed by the person solicited.

The above portion of the statute appears designed to handle the theory of merger. *See State v. Sandoval,* 90 N.M. 260, 561 P.2d 1353 (Ct.App.1977).

The first sentence provides for no liability when the solicitation is necessarily incidental to the principal offense solicited. Thus, if the theory of defendant's guilt for the principal offense of fraud was that of accessory liability for fraud, and the trial court's findings sustain that supposition, solicitation would be necessarily incidental to the offense solicited and there could be no liability for solicitation.

The second sentence provides that a person is "not guilty" of solicitation when the solicitation constitutes a felony offense other than criminal solicitation. Consequently, if the solicitation constitutes conspiracy, defendant would be guilty of the conspiracy and not of the solicitation.

The third sentence provides that a person may be prosecuted for and convicted of all offenses in the situations covered by the first two sentences. This must mean that the prosecution need not make a pretrial or pre-instruction election; rather, all offenses may be submitted to the jury. The "no liability" or "not guilty" determinations contained in the first two sentences would then be made at the time of entering the judgment and sentence. Thus, one could not be separately sentenced for two offenses if his case fit within the first two sentences of Section 30–28–3D. *See State v. Gallegos,* 92 N.M. 370, 588 P.2d 1045 (Ct.App.1978).

There remains the question whether there may be adjudications of guilt when the offenses charged fall within the first two sen-

tences. *See Gallegos; see also State v. Keener,* 97 N.M. 295, 639 P.2d 582 (Ct.App.1981). The first two sentences of subsection D provide that there may not be; the third sentence indicates that a defendant could be adjudicated guilty if "convicted" is defined as it was in *Keener.* But *Keener* arrived at its holding by an interpretation of the Rules of Evidence. Although such an interpretation is not required here, we do not see any barrier to a formal adjudication of guilt on both counts so long as there is no separate sentence on each count. A possible collateral consequence, *see Gallegos,* in terms of habitual liability if defendant were to later commit a crime, is avoided by the express terms of NMSA 1978, Section 31–18–17 (Repl. Pamp.1981), since the solicitation convictions here are part of the same transactions related to the other offenses charged.

Nonetheless, defendant is entitled to relief under Section 30–28–3(D). He was adjudicated guilty on two counts of solicitation to commit fraud; at the same time, he was adjudicated guilty on the fraud and conspiracy to commit fraud counts. Even though we reverse the fraud convictions for failure of the State to prove and the court to find an essential element of fraud (injury, loss, or damage), defendant could not be liable even as an accomplice for criminal solicitation because of the first sentence of Section 30–28–3(D). But since the solicitation also constituted a conspiracy, not dependent on guilt of fraud, defendant properly could be adjudged guilty of conspiracy and not solicitation under the second sentence of the same subsection.