This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

    Plaintiff-Appellee,

v.                            **NO. 29,731**

**CODY LITTLE**,

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. Schoobridge, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

Defendant Cody Little appeals his convictions for one count of commercial burglary, in violation of NMSA 1978, Section 30-16-3(B) (1971), and one count of larceny over $500, in violation of NMSA 1978, Section 30-16-1(D) (2006). On appeal, he argues that the trial court abused its discretion in granting the State's motion to continue to conduct further DNA testing and in allowing the results of the further DNA testing to come into evidence. We conclude that the trial court did not abuse its discretion in either granting the State's motion for continuance or in allowing the DNA evidence to come in at trial. We affirm.

**BACKGROUND**

Police officers were dispatched to Marshall's Department Store in Lovington, New Mexico, at approximately 12:20 a.m. on June 24, 2008, after an alarm went off at the store. When officers arrived at the scene, they noticed a broken window on one side of the store. The officers, believing that a commercial burglary had occurred, called additional officers to locate pedestrians in the area.

After the store owner arrived and officers had secured the area, the officers investigated the inside of the store. Inside they found shoe prints and what they suspected were blood droplets.

Behind another business across the street, an officer located boxes containing a Tview mobile entertainment system with a touch screen and Bluetooth and a

Kenwood CD receiver. These items were identified by a Marshall's employee as Marshall's property, and the manager indicated that the items had a value of $550. There were suspected blood droplets on these boxes as well. A detective collected four samples of the suspected blood from inside the store and from the boxes located across the street for DNA testing.

Defendant was found walking less than a block or so from Marshall's. Officers observed what they believed to be blood droplets on the white tank top he was wearing. Defendant claimed that the substance on his tank top was barbeque sauce. The officers questioned Defendant about whether he had been to a barbeque that day, as it had been raining and they suspected he had not; however, they released him without taking samples from the substance on his shirt.

The four samples of suspected blood were sent to the New Mexico Department of Public Safety Forensic Laboratory (Crime Lab) for DNA testing. On September 8, 2008, the Detective who had sent the samples received a letter from the Crime Lab informing her that the crime scene samples matched Defendant in the New Mexico DNA Identification System (NMDIS).

Following the NMDIS match, an arrest warrant was issued, and Defendant was arrested. The State filed a criminal information on October 29, 2008. On that same date, the State disclosed a list of witnesses for trial, including Jennifer Otto from the

Crime Lab. A certificate of disclosure informed Defendant that all documents and reports that the State had were available for inspection and copying at the district attorney's office, and the record reflects that one of the items in the possession of the State was a letter indicating that Defendant was a NMDIS match.

The discovery deadline for the disclosure of lab reports, scientific analysis, and names of expert witnesses was set for February 16, 2009. The trial was initially set for April 7, 2009, on a trailing docket, however, Defendant's case was not called on that date.

On April 8, 2009, the day after the scheduled trial date, the State filed an opposed motion to continue the case for the purpose of obtaining more DNA standards from Defendant in order to compare with the blood found at the scene of the burglary. At a hearing on the motion on April 9, 2009, the State advised the trial court that it would take between two and three weeks for the Crime Lab to complete testing. The court granted the motion to continue, and reset the trial date for about a month later on May 5, 2009. The State received the results from the DNA test on April 29, 2009. On either April 30, 2009, or May 1, 2009, the results were received by Defendant.

On the morning of trial, Defendant moved to dismiss the case, arguing that the State was not prepared for the original trial when it requested a continuance after the

4

original trial date. He also moved to exclude the DNA evidence from trial because it had been obtained and disclosed just days before trial. The trial court judge denied both motions.

At trial, Ms. Otto, a forensic DNA expert, testified for the State regarding the results of the DNA test. She testified that to a reasonable degree of scientific certainty, the DNA samples obtained from Marshall's matched those taken from Defendant. Based on this and other circumstantial evidence, a jury convicted Defendant of both burglary, in violation of Section 30-16-3(B), and larceny over $500 but less than $2500, in violation of Section 30-16-1(D).

Defendant appeals his convictions, arguing that it was an abuse of discretion to grant the State's motion to continue and that the DNA evidence should have been excluded from trial.

**DISCUSSION**

**Standard of Review**

We review both of Defendant's claims for an abuse of discretion. *See State v. Rivera*, 2009-NMCA-132, ¶ 43, 147 N.M. 406, 223 P.3d 951 (stating that we review the grant or denial of a motion to continue for abuse of discretion), *cert. denied*, 2009-NMCERT-011, 147 N.M. 463, 225 P.3d 793; *State v. Duarte*, 2007-NMCA-012, ¶ 14, 140 N.M. 930, 149 P.3d 1027 (stating that a trial court's ruling on late discovery is

reviewed for an abuse of discretion). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 (internal quotation marks and citation omitted). A trial court abuses its discretion when the ruling is clearly untenable or not justified by reason. *Id.* If there are reasons that both support and detract from a court's decision, there is no abuse of discretion. *Id.* It is Defendant's burden to establish that the trial court abused its discretion. *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20.

**The Trial Court Did Not Abuse Its Discretion in Granting the State's Motion for Continuance**

The State filed a motion to continue on April 8, 2010, because "the [C]rime [L]ab need[ed] additional standards from [D]efendant to compare with blood found at the scene of the burglary." At the April 9, 2009, hearing, the trial court granted the State's motion and reset trial for May 5, 2009. Defendant contends that it was an abuse of discretion for the trial court to grant the State's motion, because the State provided no justification for its failure to obtain additional DNA standards prior to the hearing and because the delay was unreasonable.

In *Torres*, our Supreme Court set forth a number of factors to consider in determining whether a trial court abused its discretion in granting or denying a motion to continue. *Id.* ¶ 10. The factors that a trial court must consider are (1) the length of

6

the delay; (2) the likelihood that the delay would accomplish the movant's objectives; (3) the number of previous continuances in the same matter; (4) the degree of inconvenience to the parties and the court; (5) the legitimacy of the motive for the request to delay; (6) whether the needed delay is movant's fault; and (7) the prejudice to the movant if the motion is denied. *Id.* If the trial court applies the factors in a logical and balanced way and finds that they supported granting the motion, then there is no abuse of discretion. *State v. Salazar*, 2007-NMSC-004, ¶ 27, 141 N.M. 148, 152 P.3d 135.

The only arguments Defendant makes on the issue of whether the trial court abused its discretion when it granted the State's continuance is that the delay was the State's fault, the State did not put forth a justification for that delay, and the State's motive was not legitimate. We agree with Defendant that the delay was the State's fault, and therefore, conclude that the sixth *Torres* factor would weigh against a continuance. However, we disagree with Defendant that the State's motive was not legitimate. Here, the State was seeking conclusive DNA evidence to tie Defendant to the scene of the burglary and larceny. We cannot say that this was not a legitimate reason to ask for the continuance. Nevertheless, we analyze the remaining factors according to *Torres*.

In this case, several factors support the trial court judge's decision to grant the State's motion to continue. The State only asked for a delay long enough to get DNA results back from the Crime Lab. The State indicated that this would take approximately two to three weeks. The trial court set a new trial date for May 5, 2009, which was approximately one month after the hearing on the motion to continue. The State's objective was to obtain DNA results prior to trial. The delay was likely to accomplish the State's objective as the extension requested by the State was tailored to the time it was expected to take for the Crime Lab to provide the results. At the hearing on April 9, 2009, the State indicated that it would execute a search warrant for more DNA standards on Defendant the same day. Thus, the parties were likely to have the results before the new trial date. Additionally, it was the first continuance requested in Defendant's case, and it was not inconvenient to the parties or to the court because the court was able to reschedule the case one month after the original trial date in spite of the court's heavy docket. *See Torres*, 1999-NMSC-010, ¶ 17 (holding that for inconvenience to become a factor for consideration, there must be some significant or substantial inconvenience, which should be demonstrated by the record). Finally, if the trial court had denied the State's motion to continue, it would have prejudiced the State from obtaining evidence that tied Defendant to the scene of the crime.

Therefore, despite the fact that one of the factors may have weighed against granting the continuance, we conclude that the trial court did not abuse its discretion. Based on a balancing of all of the *Torres* factors, the trial court had sufficient reasons to justify its decision. *See Salazar*, 2007-NMSC-004, ¶ 27 (holding that a motion to continue should be granted if a balanced and logical application of the factors support the motion).

**The Trial Court Did Not Abuse Its Discretion in Denying the Motion to Exclude New DNA Evidence**

Defendant also contends that the trial court erred in denying his motion to exclude the results from the new DNA evidence that the State obtained after the original trial date was continued. Although he frames this argument as a suppression issue, we understand it to be an argument regarding exclusion, as suppression arguments are for claims that evidence was illegally obtained. *See McCray v. State of Ill.*, 386 U.S. 300, 307 (stating that the purpose of a motion to suppress is "as a sanction to compel [law] enforcement officers to respect the constitutional security of all of us under the Fourth Amendment"). Defendant asserts that the evidence should have been excluded because its late disclosure violated his right to present a defense and prejudiced him because he did not have time to obtain his own expert or to adequately prepare for cross-examination.

When we review a ruling on late disclosure of evidence for a reversal, we consider the following factors:

> (1) whether the State breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence.

*Duarte*, 2007-NMCA-012, ¶ 15.

**1.     The State Did Not Breach Its Duty to Disclose or Intentionally Deprive Defendant of DNA Evidence**

We first consider whether the State breached a duty or intentionally deprived Defendant of either the initial or the new DNA evidence. In October 2008, the State disclosed a letter from the Crime Lab stating that DNA samples collected from the crime scene were a match in the NMDIS to Defendant. The State also disclosed the name of its expert, Ms. Otto, in a witness list that same month. Defendant did not dispute that this information was provided to him, and he does not contest the existence of any documents or reports that were not disclosed to him. Thus, with regard to the initial DNA evidence, the State did not breach any duty to disclose, and it did not deprive Defendant of evidence. *See* Rule 5-501(A)(4), (5) NMRA (stating that the state must make an initial disclosure of witnesses that the prosecution intends to call at trial and of any results of any scientific tests or experiments to the defendant and make those available for examination by the defendant).

10

There was similarly no breach with respect to the further testing and late disclosure of new DNA evidence. Following the February 16, 2009, deadline for disclosure of lab reports, scientific analysis, and the names of expert witnesses, the State requested a continuance so that further analysis could be done on the DNA evidence. When the State moved for a continuance, it was requesting time for further testing of DNA evidence that was already at issue in the case. Although this request might have suggested that the original evidence was lacking, the trial court, in its discretion, granted the State the relief that it requested. The State had results from the further testing on April 29 or April 30, 2009, and those results were received by Defendant on April 30, 2009 or May 1, 2009. *See State v. McDaniel*, 2004-NMCA-022, ¶ 10, 135 N.M. 84, 84 P.3d 701 (holding that the duty to disclose established by Rules 5-501(A) and 5-505(A) NMRA was not violated where disclosure occurred "as soon as" the prosecutor obtained the material in question). This complied with the State's continuing duty to disclose evidence and information to Defendant. *See* Rule 5-505(A) (stating that if "a party discovers additional material or witnesses which he would have been under a duty to produce or disclose at the time of" compliance with Rules 5-501 and 5-502 NMRA, then he has a duty to "give written notice to the other party or the party's attorney of the existence of the additional material or witnesses").

Lastly, there was no misconduct by the State. While we would not approve of the State purposefully delaying testing of scientific evidence until after the discovery deadlines had passed if the delay was done as a trial tactic, here, the trial court concluded that the State did not act intentionally to deprive Defendant of the new DNA evidence. Defendant does not point to and there is no evidence in the record that this was a dilatory tactic by the State in this case. Therefore, the State did not breach a duty to disclose or intentionally deprive Defendant of the new DNA evidence.

**2. The Late-Disclosed New DNA Evidence Was Not Material**

The second factor is the materiality of the late disclosed evidence. "The test for materiality . . . is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Duarte*, 2007-NMCA-012, ¶ 15 (internal quotation marks and citation omitted).

Defendant asserts that there was a "reasonable probability that the result could have been different," because he was unable to effectively challenge the new DNA evidence. He contends that if he had been given an opportunity to effectively

12

challenge the evidence, he would have been able to "exercise his constitutional right to present a defense."

Defendant further argues that he would have obtained his own expert to review the results or to testify on his behalf, but he has not shown how that expert would have made a difference to his case. *See State v. Boyett*, 2008-NMSC-030, ¶¶ 35-36, 144 N.M. 184, 185 P.3d 355 (holding that the denial of a motion for a new trial was not an abuse of discretion when the defendant did not demonstrate "that, with sufficient time, he could have presented an expert to testify" in his favor). Thus, we are not persuaded that the evidence was material to Defendant, as he has not met his burden to demonstrate that the result of the proceeding would have been different.

**3.     Defendant Was Not Prejudiced**

In considering the prejudice to Defendant, the court must consider whether Defendant's case "would have been improved by an earlier disclosure or how the defense would have prepared differently." *Duarte*, 2007-NMCA-012, ¶ 15 (alteration omitted) (internal quotation marks and citation omitted). However, because Defendant failed to request a continuance, he effectively waived his claim that he was prejudiced by this late disclosure of the new DNA results. *See State v. Barraza*, 110 N.M. 45, 48-49, 791 P.2d 799, 802-03 (Ct. App. 1990) (holding that a defendant's failure to seek a continuance undermines his claim of unfair surprise and may waive

a complaint that evidence was not timely disclosed).  Defendant reasons that he did not request a continuance because he did not want to sacrifice his right to a speedy trial as guaranteed by both the Federal and State Constitutions.  He cites to a Washington Supreme Court case to establish that it is possible that a defendant's right to a speedy trial or his right to be represented by effective counsel could be prejudiced when a State fails to exercise due diligence.  We are not persuaded by Defendant's argument.  Even if he had been forced to request a continuance, it is not necessarily true that it would have endangered his right to a speedy trial, because the court analyzes several factors for speedy trial violations. *See State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387 (establishing that the four factors to be balanced in a speedy trial analysis are (1) length of delay, (2) reasons for delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant).  Even if the court found that  the reason for delay could have been attributed to him when he requested a continuance, it may have only weighed slightly against him in the analysis and would not by itself endanger his speedy trial right. *See State v. Tortolito*, 1997-NMCA-128, ¶ 14, 124 N.M. 368, 950 P.2d 811 (holding that a two-month delay requested by the defendant to prepare to defend against DNA evidence only weighed slightly against him in a speedy trial analysis).  Accordingly, Defendant fails to demonstrate that his right to a speedy trial was a valid reason for failing to request a

continuance if more time was, as he claims, necessary in order to prepare an effective defense.

Furthermore, there is sufficient evidence in the record to establish that Defendant was on notice that DNA evidence would be at issue in the case and that he would need to prepare for it. The State disclosed Ms. Otto as a witness in its October 29, 2008, witness list, and the State's motion for continuance was granted for the purpose of obtaining new DNA results from the State Crime Lab one full month before the reset trial date. Even though Defendant contends that he was prejudiced because he did not know of the actual results of the test until a few days before trial, we note that he was notified of the results very near to the time the State obtained the results. We conclude that Defendant should have known that he might need his own expert to review the results once he obtained them, and he was not prejudiced by the late disclosure when he should have anticipated that he would need to cross-examine Ms. Otto. *See McDaniel*, 2004-NMCA-022, ¶ 15 (holding that the defendant was not prejudiced where he was on notice of the substantive testimony of a late-disclosed witnesses testimony when that testimony had been contained in other reports disclosed to him).

**4.      The Trial Court Cured the Late Disclosure of New DNA Evidence**

15

Finally, we consider whether the trial court cured the late disclosure of the new DNA evidence. Defendant argues that the trial court did not sufficiently cure or properly sanction the State for the late disclosure of new DNA evidence by merely allowing Defendant "some leeway" in cross-examination of Ms. Otto. He contends that this cure for the late disclosure denied him "the right to present a defense, . . . the right to challenge the State's evidence, and . . . the need to have his own expert review the results" where an effective challenge would have required having his own defense expert review to the results. We disagree.

"Remedies for violation of discovery rules or orders are discretionary with the trial court[,]" and we are unpersuaded that the trial court's cure in this case "was against logic and not justified by reason." *McDaniel*, 2004-NMCA-022, ¶ 6 (internal quotation marks and citations omitted). Here, the trial court correctly concluded that Defendant had notice that DNA evidence would be at issue in the case because the State had identified Ms. Otto as a witness in October 2008, and the State's continuance was granted to obtain more conclusive DNA results. We believe that allowing greater latitude in cross-examination, where Defendant failed to either obtain his own expert or request more time to obtain such a witness, was a reasonable cure for the late disclosure of the new DNA results. *See State v. Vallejos*, 2000-NMCA-075, ¶¶ 33-34, 129 N.M. 424, 9 P.3d 668 (holding that a cure that required the

prosecution to make a witness available to the defendant a few days before trial was reasonable and within the trial court's discretion as a cure for late disclosure of that witness to the defendant).

Defendant cites to an Eighth Circuit case to contend that the denial of his motion to exclude new DNA evidence from trial was an abuse of discretion. In *United States v. Davis,* 244 F.3d 666, 671 (8th Cir. 2001), the Eighth Circuit held that the trial court did not abuse its discretion when it granted the defendant's motion to exclude DNA evidence that was disclosed late to both the trial court and the defendant. In *Davis*, several defendants robbed a bank. *Id.* at 669. At the time of their arrests, hair and saliva samples were taken from them, which were later sent to the state crime lab. *Id.* The trial court set a discovery deadline for February 28, 2000. *Id.* at 668. Trial was originally set for April 3, 2000. *Id.* On March 30, 2000, for the first time, the prosecution notified the defendants and the court that it had DNA evidence and that the evidence might cause some delay. *Id.* at 669. On March 31, 2000, the prosecution provided a written report on the DNA evidence. *Id.* at 670. The court heard and granted a motion to exclude the DNA evidence from the trial. *Id.* at 669. The trial court concluded that it would not "condone the government's last-minute production of evidence by allowing the evidence to be introduced at trial and thereby forcing the defense to seek a continuance." *Id.* at 670. The prosecution then filed a motion to

reconsider, or alternatively, sought a one-week continuance to allow the defendant time to respond to the DNA evidence; both of which were denied by the trial court. *Id.* at 669. On appeal, the prosecution argued that it had not acted intentionally or in bad faith and that the defendants were not prejudiced by the late disclosure when the defendants could have sought a continuance and that the time would have remedied the late disclosure. *Id.* at 670. The Eighth Circuit held that it was not an abuse of discretion "to sanction the government for what was an obvious discovery violation." *Id.* at 671.

Defendant contends that *Davis* should inform our decision and that we should similarly conclude that the State breached its duty to disclose and that the late disclosure prejudiced him. However, *Davis* is distinguishable from our case because of the issue of notice. In *Davis*, the court and defendants learned for the first time, days before trial, that DNA evidence had been tested and would be at issue in the case. *Id.* at 669. Here, Defendant had notice for several months before the initial trial date that DNA evidence would be at issue in the case because the initial NMDIS match letter was made available to him and because he knew that the State had an expert. Even though Defendant has repeatedly asserted that the initial DNA evidence would not warrant his obtaining an expert, he has not adequately demonstrated why that is so. Even more importantly, we remind Defendant that we review for an abuse of

discretion and "where a trial court must exercise discretion in deciding between two possible rulings, either of which would be reasonable, we will not reverse the court's decision." *Mayeux v. Winder*, 2006-NMCA-028, ¶ 43, 139 N.M. 235, 131 P.3d 85. Here, the trial court's decision to admit the evidence was reasonable and we therefore find no abuse of discretion. *Moreland*, 2008-NMSC-031, ¶ 9 (stating that we do not hold that the trial court abused its discretion unless its decision was "clearly untenable or not justified by reason" (internal quotation marks and citation omitted)).

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the trial court.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**CELIA FOY CASTILLO, Chief Judge**